[No. B181878. Second Dist., Div. Eight. Jan. 20, 2006.]

In re the Marriage of JANET E. and RONALD W. BURKLE.
JANET E. BURKLE, Respondent, v.
RONALD W. BURKLE, Appellant;
LOS ANGELES TIMES COMMUNICATIONS LLC et al., Respondents.

1046

COUNSEL

Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, Patricia L. Glaser and Nabil L. Abu-Assal; Wasser, Cooperman & Carter, Dennis M. Wasser and Bruce E. Cooperman; De Goff and Sherman and Richard Sherman for Appellant.

Philip Kaufler, Hugh John Gibson and Hillel Chodos for Respondent Janet E. Burkle.

Karlene W. Goller; Davis Wright Tremaine, Kelli L. Sager, Alonzo Wickers IV and Susan E. Seager for Respondents Los Angeles Times Communications LLC et al.

OPINION

BOLAND, J.—

## SUMMARY

Family Code section 2024.6[1] requires a court, upon the request of a party to a divorce proceeding, to seal any pleading that lists and provides the location or identifying information about the financial assets and liabilities of the parties. We conclude that section 2024.6 is unconstitutional on its face. The First Amendment provides a right of access to court records in divorce proceedings. While the privacy interests protected by section 2024.6 may override the First Amendment right of access in an appropriate case, the statute is not narrowly tailored to serve overriding privacy interests. Because less restrictive means exist to achieve the statutory objective, section 2024.6 operates as an undue burden on the First Amendment right of public access to court records.

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2003, Janet E. Burkle filed a petition to dissolve her marriage to Ronald W. Burkle. Several months later, Mr. Burkle moved to seal or redact certain pleadings. The parties' son and his parents were considered persons of "high public interest." On April 13, 2004, the trial court ordered the redaction of various documents in order to protect the son from possible harm. The court's order redacted certain financial information "based solely upon the potential impact that financial information may have on [the son's] safety." The redacted financial information consisted of residence addresses, and names and account numbers for bank and brokerage accounts. The court, however, refused to redact account balance information. It also refused Mr. Burkle's request to seal the parties' postmarital agreement in its entirety, allowing redaction only of addresses, residences and bank and brokerage account information within the postmarital agreement.

Less than two months later, the Legislature passed Assembly Bill No. 782, adding section 2024.6 to the Family Code as urgency legislation. The Governor signed the legislation and section 2024.6 became effective June 7, 2004. Subdivision (a) of section 2024.6 provides: "Upon request by a party to a petition for dissolution of marriage, nullity of marriage, or legal separation, the court shall order a pleading that lists the parties' financial assets and liabilities and provides the location or identifying information about those assets and liabilities sealed. The request may be made by ex parte application. Nothing sealed pursuant to this section may be unsealed except upon petition to the court and good cause shown." Section 2024.6 defines "pleading" as "a document that sets forth or declares the parties' assets and liabilities, income and expenses, a marital settlement agreement that lists and identifies the parties' assets and liabilities, or any document filed with the court incidental to the declaration or agreement that lists and identifies financial information." (§ 2024.6, subd. (c).)[2]

Six months after the enactment of section 2024.6, on December 21, 2004, Mr. Burkle brought an ex parte application to seal 28 pleadings under the

---

[2] Section 2024.6 also states that the Judicial Council form used to declare assets and liabilities must require the filing party to state "whether the declaration contains identifying information on the assets and liabilities listed therein." If the party uses a pleading other than the Judicial Council form, the pleading must "exhibit a notice on the front page, in bold capital letters, that the pleading lists and identifies financial information and is therefore subject to [section 2024.6]." (§ 2024.6, subd. (b).) Section 2024.6 further contains service requirements (§ 2024.6, subd. d) and a provision stating that it does not preclude a party from using "any document or information contained in a sealed pleading in any manner that is not otherwise prohibited by law." (§ 2024.6, subd. (e).)

authority of the section.[3] The documents to be sealed included such pleadings as Ms. Burkle's income and expense declaration, notices of lis pendens, motions to which the parties' postmarital agreement was an exhibit, pleadings that contained street addresses of real property, a motion for summary adjudication, discovery motions, and so on.

The Los Angeles Times and The Associated Press (collectively, the press) filed a request to intervene for the purpose of opposing Mr. Burkle's ex parte application, arguing that the press and the public have a presumptive right of access to records and proceedings in divorce cases, and that section 2024.6 is unconstitutional because it requires trial courts to seal divorce court records without providing for the document-by-document analysis and the threshold inquiries required by the First Amendment.[4] The trial court ordered the 28 documents filed under seal conditionally, subject to further hearing, and granted the press's request to intervene.

In his opposition, Mr. Burkle argued that section 2024.6 was presumptively constitutional, and the press had failed to (1) balance Mr. Burkle's right of privacy against the press's right of access, and (2) prove "that the statute does not serve a compelling purpose or that it is not narrowly tailored to achieve its purpose." In response, the press argued that section 2024.6 is unconstitutional because it reverses the First Amendment presumption that court records are open to the public, by requiring a trial court to seal records without evaluating whether the sealing is necessary to protect a compelling interest. The press also argued that Mr. Burkle bore the burden of demonstrating that section 2024.6 furthers a compelling governmental interest and is narrowly tailored to serve that interest, and that he failed to do so. Moreover, the press argued, even if a compelling interest existed in financial privacy, section 2024.6 is not narrowly tailored to protect that interest "because it requires the wholesale sealing of entire divorce pleadings and files." Ms. Burkle advanced similar arguments.[5]

Balancing "a traditional access to court files in dissolution proceedings and the right to privacy," the trial court ruled that section 2024.6 violated the First

---

[3] After the trial court's April 13, 2004 redaction order, the parties' counsel agreed on a procedure to redact portions of the files. Section 2024.6 became law before that procedure could be implemented. The parties then deferred the redacting process because, according to a declaration from Mr. Burkle's counsel, "each of the documents which was to have been redacted now is subject to being sealed under the new statute."

[4] We refer to "divorce" proceedings for sake of simplicity. The statute refers to proceedings for "dissolution of marriage, nullity of marriage, or legal separation . . . ." (§ 2024.6, subd. (a).)

[5] Ms. Burkle's response purported to incorporate a writ petition and reply she had filed with the Court of Appeal, and counsel declined the opportunity to resubmit his arguments to the trial court in a form complying with court rules. The trial court struck the improperly incorporated appellate pleadings from Ms. Burkle's response.

Amendment: "The court finds that while there is a compelling state interest underpinning Family Code § 2024.6, it is not narrowly tailored to effectuate that interest and unduly burdens the competing Constitutional right of public access to civil court proceedings and records. The court concludes the statute is overbroad because it mandates sealing entire pleadings to protect a limited class of specified material. The court also observes that the defect is readily curable by the Legislature."

The trial court explained it had no difficulty finding that a compelling governmental interest underpinned section 2024.6, as the right of privacy is guaranteed by the California Constitution. However, it observed there was no compelling interest in streamlining the process of sealing confidential information "to the point that the court is totally divested of discretion in all instances." Responding to Mr. Burkle's argument that discretion should be implied, consistent with the rule that doubts should be resolved in favor of constitutionality, the court observed that "there is not even a glimmer" that the Legislature intended court discretion. It further stated, "Protection of the competing right of public access requires some discretion on a case-by-case basis before entire pleadings are sealed on behalf of some small portion within them." The court continued: "The statute is not unconstitutional merely because it deprives the court of discretion as to what should be sealed, but because as enacted it seals the entirety of a pleading if any of the specified materials are included in it. Thus, a 100 page pleading filled with legal argument of genuine public interest must be sealed if a party's home address appears even in a footnote. Absent judicial scrutiny prior to such sealing, § 2024.6 could indeed become an instrument of gamesmanship. The statute cannot be deemed 'narrowly tailored' because it necessarily will seal material in which there is no overriding right to privacy."

The trial court thereupon vacated its provisional sealing order, but ordered the pleadings to remain sealed for 60 days to permit Mr. Burkle to seek appellate review. This appeal followed.[6]

## DISCUSSION

### A. *Introduction.*

In *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178 [86 Cal.Rptr.2d 778, 980 P.2d 337] (*NBC Subsidiary*), the

---

[6] Ms. Burkle moved to dismiss Mr. Burkle's appeal, asserting the trial court's order was not appealable. This court heard oral argument on the appealability issue and, on July 19, 2005, denied Ms. Burkle's motion, concluding the order was appealable as a final order on a collateral matter.

California Supreme Court held that "in general, the First Amendment provides a right of access to ordinary civil trials and proceedings, [and] that constitutional standards governing closure of trial proceedings apply in the civil setting . . . ." (*Id.* at p. 1212.) After an extensive examination of federal and state precedents, the court concluded "it is clear today that substantive courtroom proceedings in ordinary civil cases are 'presumptively open' . . . ." (*Id.* at p. 1217.) The court held that the statute under review — Code of Civil Procedure section 124 governing public court sittings—"must be interpreted to preclude closure of proceedings that satisfy the . . . historical tradition/utility considerations" applied by the United States Supreme Court in *Globe Newspaper Co. v. Superior Court* (1982) 457 U.S. 596 [73 L.Ed.2d 248, 102 S.Ct. 2613] (*Globe*). (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1217.) The presumption of openness, or preclusion of closure, in ordinary civil cases applies unless the trial court (1) provides notice of a contemplated closure, and (2) holds a hearing and expressly finds that: "(i) there exists an overriding interest supporting closure and/or sealing; (ii) there is a substantial probability that the interest will be prejudiced absent closure and/or sealing; (iii) the proposed closure and/or sealing is narrowly tailored to serve the overriding interest; and (iv) there is no less restrictive means of achieving the overriding interest." (*NBC Subsidiary, supra,* 20 Cal.4th at pp. 1217–1218, fns. omitted.)

This case requires us to decide whether the presumption of openness applicable to substantive courtroom proceedings in ordinary civil cases likewise applies to court records in divorce proceedings and, if so, whether section 2024.6 is a constitutionally permissible restriction on the right of access under the standards announced in *NBC Subsidiary.* We conclude the presumption of openness applies, and section 2024.6 is unconstitutional.[7] Specifically, we conclude that:

—In general, the same First Amendment right of access applicable in ordinary civil cases applies in divorce proceedings.

—No meaningful distinction may be drawn between the right of access to courtroom proceedings and the right of access to court records that are the foundation of and form the adjudicatory basis for those proceedings. Consequently, court records in divorce cases, as in other civil cases, are presumptively open.

—When a statute mandates sealing presumptively open court records in divorce cases, as section 2024.6 does, the state's justification for the mandatory sealing rule must be scrutinized to determine whether the statute

---

[7] Ms. Burkle contends that section 2024.6 also violates equal protection and separation of powers principles. The trial court did not rule on these contentions, and we see no reason to consider them.

conforms to the requirements enunciated in *NBC Subsidiary*. That is, a mandatory sealing rule is permissible only if (1) an overriding interest supports the sealing rule; (2) a substantial probability of prejudice to that interest exists absent the sealing; (3) the sealing required by the statute is narrowly tailored to serve the overriding interest; and (4) no less restrictive means is available to achieve the overriding interest. (See *NBC Subsidiary, supra*, 20 Cal.4th at pp. 1217–1218.)

—In this case, section 2024.6's mandated sealing of location and identifying information about assets and liabilities is supported by constitutionally-guaranteed privacy rights, thus meeting the first requirement. Moreover, the statute arguably meets the second requirement, as we ordinarily defer to legislative findings on the probability of prejudice, in the form of identity theft and the like, to the privacy interest protected by the statute. However, the statute clearly runs afoul of the third and fourth requirements, because it is neither narrowly tailored to serve the privacy interest being protected nor is it the least restrictive means of protecting those privacy interests. In the succeeding sections, we discuss each point necessary to our conclusion that section 2024.6 is a constitutionally impermissible burden on the First Amendment right of public access to court records.[8]

---

[8] The parties have filed two requests for judicial notice and one motion to augment the record.

1. Mr. Burkle requests judicial notice of various documents relating to the legislative history of section 2024.6. While a few of the items submitted are not properly cognizable legislative history (letters to legislators from interested parties), the request is granted as to the remainder of the documents. (See *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26 [34 Cal.Rptr.3d 520].)

2. The press requests judicial notice of (a) several news articles about Mr. Burkle and (b) public reports submitted by Mr. Burkle to the California Secretary of State and the Securities and Exchange Commission, contending these materials show that information about Mr. Burkle's financial assets, homes and political activities have been placed in the public record. We deny the press's request, because these materials are entirely irrelevant to the only matter before us for review: the facial challenge to the constitutional validity of section 2024.6.

3. The press asks us to augment the appellate record with several court records filed in the trial court, including a stipulation and order for the appointment of a privately compensated temporary judge; a statement showing the temporary judge's activity and charges in the case; a sealing order entered by the temporary judge; and Mr. Burkle's ex parte application to seal trial exhibits and reporter's transcripts from the Burkles' divorce trial. The press states that these trial court records should be added to the appellate record to respond to Mr. Burkle's assertion in his opening brief that the parties had not expected a public trial in this case, and to provide "important background." Again, we discern no relevance in these documents, and deny the press's motion to augment the record.

B. *The same First Amendment right of access applicable in "ordinary civil cases" applies in divorce proceedings.*

We begin where the Supreme Court ended in *NBC Subsidiary*, with the now settled principle that substantive courtroom proceedings in ordinary civil cases are presumptively open. The court reached that conclusion after exhaustively analyzing federal and state precedents on the First Amendment right of access. While that analysis need not be repeated, we will describe the principles employed by the United States Supreme Court—and relied upon in *NBC Subsidiary*—to confirm the existence and scope of the right of access, because those are the principles that must be used to determine whether the right of access applicable to "ordinary civil cases" also applies to divorce proceedings.

As *NBC Subsidiary* instructs, the First Amendment generally precludes the closure of proceedings that satisfy the high court's "historical tradition/utility considerations . . . ."[9] (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1217.) These considerations, first identified in *Richmond Newspapers, Inc. v. Virginia* (1980) 448 U.S. 555 [65 L.Ed.2d 973, 100 S.Ct. 2814] (*Richmond Newspapers*), were confirmed in *Globe, supra,* 457 U.S. 596. *Globe*, which established the First Amendment right of access to criminal trials, considered that (1) the criminal trial historically was open to the press and the general public, a "uniform rule of openness" (the historical tradition),[10] and (2) the institutional value of the open criminal trial was "recognized in both logic and experience" (the utility consideration).[11] (*Globe, supra,* at pp. 605–606.) After analyzing the reasoning in *Globe* and subsequent high court cases, our Supreme Court observed that: "[T]he high court has not accepted review of any of the numerous lower court cases that have found a general First Amendment right of access to civil proceedings, and we have not found a single lower court case holding that generally there is no First Amendment right of access to civil proceedings. Under these circumstances, we believe there is no reason to doubt that, in general, the First Amendment right of access applies to civil proceedings as well as to criminal proceedings." (*NBC Subsidiary, supra,* 20 Cal.4th at

---

[9] References to the "high court" are to the United States Supreme Court, following the usage employed by the California Supreme Court in *NBC Subsidiary*.

[10] The "uniform rule of openness" was significant in constitutional terms both because " 'the Constitution carries the gloss of history' " and because " 'a tradition of accessibility implies the favorable judgment of experience.' " (*Globe, supra,* 457 U.S. at p. 605, quoting *Richmond Newspapers, supra,* 448 U.S. at p. 589 (Brennan, J., concurring).)

[11] The Supreme Court observed that public scrutiny of criminal trials safeguarded the integrity of the factfinding process; fostered an appearance of fairness, heightening respect for the judicial process; and permitted the public to participate in and serve as a check on the judicial process, an essential component of the structure of self-government. (*Globe, supra,* 457 U.S. at p. 606.)

p. 1209.) The court stated its belief that "the public has an interest, in *all* civil cases, in observing and assessing the performance of its public judicial system, and that interest strongly supports a general right of access in ordinary civil cases."[12] (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1210.) In short, the court concluded that civil proceedings, like criminal proceedings, satisfied the high court's two considerations: historical tradition and the utility or institutional value of open trials. "[T]he dicta in the high court criminal cases, and the clear holdings of numerous civil progeny of those cases, convincingly conclude that the utilitarian values supporting public criminal trials and proceedings apply with at least equal force in the context of ordinary civil trials and proceedings."[13] (*NBC Subsidiary, supra,* at p. 1211, fn. omitted.)

The question for this court is whether divorce proceedings are sufficiently different from "ordinary civil trials and proceedings" to justify a different conclusion on the right of access. We do not think so. To be sure, the Supreme Court in *NBC Subsidiary* stated that its opinion addressed the right of access to "ordinary civil proceedings in general, and not any right of access to particular proceedings governed by specific statutes." (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1212, fn. 30.) As to those proceedings, footnote 30 referred to differing opinions from other courts in cases involving parental termination proceedings and juvenile proceedings, and listed the Family Code, as well as the Code of Civil Procedure and the Welfare and Institutions Code, as providing for the closure of certain civil proceedings.[14] (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1212, fn. 30.) While Mr. Burkle relies on footnote 30 to conclude that *NBC Subsidiary* requirements do not apply to divorce proceedings, we do not agree. The Supreme Court's care in confining its decision to the case at hand, and its mention of the Family Code among statutes that provide for closure of certain proceedings, does not portend or imply that divorce proceedings are not among the ordinary civil proceedings that are presumptively open. The court simply did not address that question.

To determine whether divorce proceedings are presumptively open, we follow the principles enunciated by the Supreme Court in *NBC Subsidiary*:

---

[12] The Supreme Court expressly rejected the contention that First Amendment access rights should be limited to those civil trials or proceedings that directly involve the public or are deemed newsworthy to a significant portion of the public. (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1210.)

[13] See, e.g., *Richmond Newspapers, supra,* 448 U.S. at page 580, footnote 17 ["[w]hether the public has a right to attend trials of civil cases is a question not raised by this case, but we note that historically both civil and criminal trials have been presumptively open"].

[14] The court cited a New Jersey Supreme Court case holding that the First Amendment right of access applies to parental termination proceedings and that per se rules of closure were inappropriate (*Div. of Youth & Fam. Serv. v. J.B.* (1990) 120 N.J. 112 [576 A.2d 261]), and a California case declining to recognize such a right in juvenile dependency proceedings, absent compulsion by the high court. (*San Bernardino County Dept. of Public Social Services v. Superior Court* (1991) 232 Cal.App.3d 188 [283 Cal.Rptr. 332].)

proceedings that satisfy the high court's "historical tradition/utility consider-ations" are presumptively open. (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1217.) We therefore assess those two considerations.

First, as *NBC Subsidiary* directs, we look to historical tradition, and find nothing to suggest that, in general, civil trials in divorce cases have not historically been open to the public just as any other civil trial. To be sure, section 214 of the Family Code provides an exception to the general statutory rule that the sittings of every court are to be public. (Code of Civ. Proc., § 124.) Section 214 authorizes the court, "when it considers it necessary in the interests of justice and the persons involved, [to] direct the trial of any issue of fact joined in a proceeding under this code to be private . . . ." Section 214, however, is obviously the exception, not the general rule, in divorce cases. We do not doubt that divorce cases in particular and family law in general may produce a greater abundance of situations in which it is appropriate, "in the interests of justice and the persons involved," to try a particular fact issue privately. The existence of an expressly limited exception to a general rule, however, does not obviate the general rule. We are not aware of, and Mr. Burkle does not offer, any cases or commentary supporting the notion that divorce proceedings have ever been generally excepted from California's historical tradition of presumptively open civil proceedings. Indeed, in the context of court records, which we address in the succeeding section, California courts have made the point virtually unassailable: "[N]o California case holds or even hints that the principles articulated in these cases [the generally open nature of court files] vary when family law litigation is involved. . . . In general, court files in family law cases should be treated no differently than the court files in any other cases for purposes of considering the appropriateness of granting a motion to seal any of those files." (*In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1413–1414 [77 Cal.Rptr.2d 395], fn. omitted (*Lechowick*).)

Second, and again in accordance with *Globe* and *NBC Subsidiary,* we look to the utility considerations—"the institutional value of the open . . . trial" (*Globe, supra,* 457 U.S. at p. 606)—enunciated in those cases. *NBC Subsidiary* concluded that "the utilitarian values supporting public criminal trials and proceedings apply with at least equal force in the context of ordinary civil trials and proceedings." (*NBC Subsidiary, supra,* at p. 1211, fn. omitted.) *NBC Subsidiary* mentioned a Court of Appeal decision "not[ing] the utility of open access in civil cases," and referred to probate and juvenile court cases. (*Id.* at p. 1211, fn. 28; see *Brian W. v. Superior Court* (1978) 20 Cal.3d 618, 625, 622–623 [143 Cal.Rptr. 717, 574 P.2d 788] [upholding juvenile court's discre-tion to permit press attendance at a fitness hearing and observing that the high court has "repeatedly recognized the salutary function served by the press in encouraging the fairness of trials and subjecting the administration of justice to the beneficial effects of public scrutiny"; also describing a commission

report concerning the benefit of " 'greater participation by the press' " in juvenile court proceedings]; *Estate of Hearst* (1977) 67 Cal.App.3d 777, 784 [136 Cal.Rptr. 821] [probate case stating that "[i]f public court business is conducted in private, it becomes impossible to expose corruption, incompetence, inefficiency, prejudice, and favoritism"; "Anglo-American jurisprudence a favors a policy of maximum public access to proceedings and records of judicial tribunals"].)[15] As the Supreme Court further observed: "[Public access plays an important and specific structural role in the conduct of [civil trials]. Public access to civil proceedings serves to (i) demonstrate that justice is meted out fairly, thereby promoting public confidence in such governmental proceedings; (ii) provide a means by which citizens scrutinize and check the use and possible abuse of judicial power; and (iii) enhance the truthfinding function of the proceeding." (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1219.) Long before *NBC Subsidiary,* the high court observed that "in some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases." (*Gannett Co. v. DePasquale* (1979) 443 U.S. 368, 386–387, fn. 15 [61 L.Ed.2d 608, 99 S.Ct. 2898].) We are unable to discern, from policy and precedent, any principled basis for concluding that the same utilitarian values that apply "with at least equal force" in criminal and civil trials (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1211) somehow lose their potency in the context of divorce proceedings.

Mr. Burkle insists divorce cases are not ordinary civil proceedings. Consequently, the presumption of openness does not apply and *NBC Subsidiary's* four-part test should not be used.[16] His rationale is that family law proceedings are governed by their own rules of court, making family law proceedings

---

[15] *NBC Subsidiary* rejected the argument that civil cases such as the one at issue there—a suit between celebrities, brought by Sondra Locke against Clint Eastwood—are purely private disputes, observing that a trial court is a public governmental institution, and that parties to a civil case are entitled to a fair trial, not a private one. (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1211.)

[16] Mr. Burkle asserts that eight other states treat divorce proceedings differently from "ordinary civil proceedings." Nevada closes divorce proceedings upon the request of any party (Nev.Rev.Stat. § 125.080 ["[i]n any action for divorce the court shall, upon demand of either party, direct that the trial and issue or issues of fact joined therein be private"]), and New York restricts access to all divorce records. (N.Y. Dom. Rel. § 235 [copies of documents or testimony in a matrimonial case may not be taken by anyone other than a party, except by order of the court].) Other states cited by Mr. Burkle as restricting access to court records in family matters are Connecticut, Florida, Iowa, Maine, Wisconsin and New Hampshire. Most of the statutory restrictions on access in these states are either much like those in California (prior to section 2024.6), or provide for the sealing only of specific sworn documents such as financial statements and child support affidavits. (See Conn.Gen.Stat. § 46b-11 [allowing exclusion of public and press from family relations matters "if the judge hearing the case determines that the welfare of any children involved or the nature of the case so requires"; records and other papers "may be ordered by the court to be kept confidential"; court rules on sealing files in family matters (Conn. Practice Book § 25-59A) state there is a presumption that

sui generis. The argument misses the mark for two reasons. First, it ignores entirely the analysis mandated by *Globe* and *NBC Subsidiary* for determining whether court proceedings are presumptively open: whether they "satisfy the high court's historical tradition/utility considerations" just discussed. (*NBC Subsidiary, supra*, 20 Cal.4th at p. 1217.) Second, the contention that family law proceedings have their own rules and may be considered sui generis is correct, but irrelevant. The same may be said of criminal proceedings and probate proceedings, which are nonetheless presumptively open. (*Globe, supra*, 457 U.S. 596; see *Estate of Hearst, supra*, 67 Cal.App.3d at p. 784 ["[a]bsent strong countervailing reasons, the public has a legitimate interest and right of general access to court records, one of special importance when probate involves a large estate with on-going long-term trusts which reputedly administer and control a major publishing empire"].)[17]

documents filed with the court are available to the public, but provide for "automatic" sealing of certain sworn financial statements, with termination of automatic sealing when any hearing is held at which financial issues are in dispute]; Fla.Fam.Law Rules Proc., rule 12.400 [closure of proceedings or sealing of records may be ordered by court only as provided under Florida's rules of judicial administration governing public access to judicial branch records; court may conditionally seal financial information required by mandatory disclosure rule if it is likely that access to the information would subject a party to abuse, "such as the use of the information by third parties for purposes unrelated to government or judicial accountability or to first amendment rights"]; Iowa Code, § 598.26 [record and evidence closed until a decree of dissolution has been entered; court shall, absent objection by a party, grant a party's motion to require sealing of a financial statement]; Me. Rules Civ. Proc., rule 80(c) [financial statements and child support affidavits, required to be signed under oath, "shall be kept separate from other papers in the case and shall not be available for public inspection"]; Wis.Stat. § 767.27 [requiring full disclosure of assets on standard disclosure form and making the information disclosed confidential].) New Hampshire's Supreme Court recently concluded that a portion of its statute automatically sealing financial affidavits (N.H. Rev.Stat. Ann. § 458:15-b) was unconstitutional. The court concluded that its legislature could, with sufficient justification, make a narrow category of documents confidential upon filing with the court, so long as the documents retained their status as presumptively open and the public was afforded procedural safeguards required by the constitutional right of access. (*The Associated Press v. State of New Hampshire* (2005) 153 N.H. 120, 135, 136 [888 A.2d 1236, 1250–1251].) One section of the statute was unconstitutional because it placed the burden of proof upon the proponent of disclosure, rather than the proponent of nondisclosure, and because it "abrogate[d] entirely the public right of access to a class of court records" and was not narrowly tailored to serve the allegedly compelling interest in protecting citizens from identity theft. (888 A.2d at p. 1253.)

[17] Mr. Burkle points to other provisions in the Family Code that provide for the closure of proceedings or the sealing of documents, such as hearings and records in conciliation court proceedings (§ 1818); sealing of children's psychological evaluations and parents' alcohol and drug tests and closing of mediation proceedings in custody and visitation proceedings (§§ 3025.5, 3041.5 & 3177); sealing tax returns in support proceedings (§ 3552); sealing records relating to artificial insemination (§ 7613); closing hearings to determine the parentage of a child (§ 7643); closing proceedings to declare a child free from parental custody (§ 7884); and sealing adoption records (§ 9200). These proceedings and records, however, are merely examples of the "particular proceedings" to which *NBC Subsidiary* referred when it stated that its opinion addressed "the right of access to ordinary civil proceedings in general, and not any right of access to particular proceedings governed by specific statutes." (*NBC Subsidiary, supra*,

Mr. Burkle asserts several other reasons for concluding the *NBC Subsidiary* analysis is inapplicable in this case. None are meritorious.

First, Mr. Burkle argues that "financial privacy" is "an 'inalienable right' now enshrined in the California Constitution" and was not at issue in *NBC Subsidiary*.[18] Moreover, when the California Constitution was amended in 2004 to expressly provide for the broad construction of statutes furthering the people's right of access to information concerning the conduct of the people's business, the amendment specifically provided that it did not modify the constitutional right of privacy or affect the construction of any statute protecting the right to privacy.[19] From this, Mr. Burkle deduces the *NBC Subsidiary* test should not be used to evaluate the constitutionality of section 2024.6. We do not agree. No authority supports the notion that the constitutional right of privacy is to be treated differently from any other potentially overriding interest for purposes of First Amendment analysis. *NBC Subsidiary* did not involve the right to privacy, but it implicated the right to a fair and impartial jury in civil proceedings. Other "overriding interests" analyzed by the courts have been premised upon rights of constitutional dimension. (*Globe, supra,* 457 U.S. 596 [protection of minor victims of sex crimes from further trauma and embarrassment]; *Press-Enterprise Co. v. Superior Court of Cal.* (1984) 464 U.S. 501, 512 [78 L.Ed.2d 629, 104 S.Ct. 819] (*Press-Enterprise I*) [privacy interests of a prospective juror during individual voir dire]; *Press-Enterprise Co. v. Superior Court* (1986) 478 U.S.1 [92 L.Ed.2d 1, 106 S.Ct. 2735] [criminal defendant's right to fair and impartial trial].) We scarcely need note that state constitutional privacy rights do not automatically "trump" the First Amendment right of access under the United States Constitution. Neither constitutional right is absolute. In short,

---

20 Cal.4th at p. 1212, fn. 30.) These specific statutes governing particular proceedings do not tell us anything about ordinary divorce proceedings. (See *Lechowick, supra,* 65 Cal.App.4th at p. 1413 [no California case even hints that the principle of historically and presumptively open court records varies when family law litigation is involved].)

[18] Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

[19] Article I, section 3, subdivision (b) of the California Constitution provides for "the right of access to information concerning the conduct of the people's business," the broad construction of statutes and other authority furthering the people's right of access, and the narrow construction of statutes limiting the right of access. (Cal. Const., art. I, § 3, subd. (b), par. (1) & (2).) Section 3, subdivision (b) specifies that it does not supersede or modify the right of privacy guaranteed in section 1 of article I, or affect the construction of any statute or other authority protecting the right to privacy. (Cal. Const., art. I, § 3, subd. (b), par. (3).) It also provides that a statute adopted after its effective date (Nov. 3, 2004) that limits the right of access "shall be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest." (Cal. Const., art. I, § 3, subd. (b), par. (2).)

Mr. Burkle's suggestion that the California Constitution tells us "how those interests [privacy and First Amendment access] must be weighed" is without merit.

Second, Mr. Burkle contends that section 2024.6 specifies the grounds for sealing records, whereas *NBC Subsidiary* involved an "absence of legislative guidance and the consequent need for judicial intervention . . . ." The statute at issue—Code of Civil Procedure section 124, which provides generally that the sittings of every court must be public—did not identify the findings that were necessary to close a civil proceeding. This argument ignores the fact that the Supreme Court's analysis of section 124 was necessitated by its conclusion that the First Amendment provides a right of access to ordinary civil trials and proceedings, thus requiring section 124 to be construed in accordance with First Amendment requirements. (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1212.) Precisely the same analysis necessarily applies to section 2024.6. Moreover, Mr. Burkle's argument presumes the very point at issue. The fact that section 2024.6 states the circumstances under which a pleading must be sealed on request—if it lists and provides the location or identifying information about assets and liabilities—does not answer the question whether divorce proceedings are presumptively open, or whether the statute comports with the First Amendment right of access.[20]

In sum, the two considerations that require a presumption of openness in substantive courtroom proceedings—historical tradition and the utility or institutional value of open proceedings—apply with equal force in divorce cases as in any other ordinary civil case. Divorce cases undoubtedly present issues different from those in other civil cases. In that sense, divorce cases are, as Mr. Burkle suggests, sui generis. However, the factors that differentiate divorce cases from "ordinary civil cases"—the intrusions into family

---

[20] Mr. Burkle cites *Pack v. Kings County Human Services Agency* (2001) 89 Cal.App.4th 821 [107 Cal.Rptr.2d 594], contending that *Pack* "distinguish[ed] and decline[d] to follow *NBC Subsidiary*" in a case involving a statute requiring the release of records pertaining to deceased foster children under specified circumstances. In *Pack*, the trial court refused to release any information about a deceased child on the ground release would be detrimental to the well-being of another child connected to the case. (*Id.* at p. 826.) *Pack* did not "decline to follow" *NBC Subsidiary*. The court in *Pack* merely pointed out, in response to the press's claim that the trial court was required to make specific factual findings when the press is denied access to otherwise public information, that the information sought was not public; that there was "no overarching First Amendment right to unfettered access to juvenile court proceedings"; and that *Pack* was "not a case analogous to *NBC Subsidiary* . . . ." (*Id.* at pp. 832–833.) As *Pack* pointed out, no party in that case argued "that the protection of other, involved children is not a legitimate 'overriding interest' which can legally support a restriction or outright ban on the disclosure of a decedent child's juvenile records." (*Id.* at p. 833.) Indeed, no party asserted a right to disclosure "other than as may be permitted under [the statute] . . . ." (*Id.* at p. 833, fn. 12.) In short, the First Amendment right of access to public records was neither asserted nor adjudicated.

privacy that accompany the dissolution of intimate relationships—do not support Mr. Burkle's view that no First Amendment right of access exists in divorce cases.[21] Instead, the factors unique to marital dissolutions are weighed in the balancing process that necessarily occurs in a decision whether to close divorce proceedings or to seal records that are presumptively open. In other words, divorce cases are different only in that they present different factors to be weighed in the balance against First Amendment access rights. Indeed, the issues distinguishing divorce cases from other civil cases—such as psychological evaluations in child custody disputes and the like—are often the subject of statutory exceptions to the general rule of public access, in which the Legislature has already engaged in the necessary balancing of privacy rights and public access rights. Nothing about these exceptions contradicts the conclusion that both historical tradition and the institutional value of open proceedings mandate a presumption of openness in divorce proceedings just as in other civil cases. Accordingly, an assessment of the constitutionality of section 2024.6 must comport with the standards enunciated in *NBC Subsidiary*.

> C. *No meaningful distinction may be drawn between the right of access to courtroom proceedings and the right of access to court records.*

Before applying the standards required by *NBC Subsidiary*, we address Mr. Burkle's further contention that *NBC Subsidiary* does not apply because section 2024.6 does not involve the closure of court proceedings, but merely the sealing of court records which "can be accessed again . . . at any time by any person upon a showing of good cause." Mr. Burkle does not inform us as to the nature of the "good cause" the press or public could show to obtain access, nor does he cite any persuasive authority distinguishing the closure of court proceedings from the closure of court records for First Amendment purposes.[22] The precedents suggest no such distinction.

As *NBC Subsidiary* points out, numerous reviewing courts "likewise have found a First Amendment right of access to civil litigation documents filed in court as a basis for adjudication." (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1208, fn. 25, citing, for example, *Brown & Williamson Tobacco Corp. v. F.T.C.* (6th Cir. 1983) 710 F.2d 1165, 1179 [vacating orders sealing documents filed in civil litigation; "[i]n either the civil or the criminal courtroom, secrecy

---

[21] Notably, "ordinary civil cases" often require the parties to reveal the same types of financial information that section 2024.6 seeks to protect in divorce cases, including, for example, civil actions in which punitive damages are sought.

[22] Mr. Burkle merely argues that *NBC Subsidiary* involved the closure of court proceedings, not the closure of records, and that sealed records can be accessed again upon a showing of good cause, whereas prejudice from exclusion of the public from a trial may be irreversible.

insulates the participants, masking impropriety, obscuring incompetence, and · concealing corruption"]; *Rushford v. New Yorker Magazine, Inc.* (4th Cir. 1988) 846 F.2d 249, 253 [First Amendment standards apply to issue of press access to documents filed in connection with a summary judgment motion in a civil case]; *Copley Press, Inc. v. Superior Court* (1992) 6 Cal.App.4th 106, 111 [7 Cal.Rptr.2d 841] [observing that the First Amendment provides "broad access rights to judicial hearings and records" and that a "lengthy list of authorities confirms this right in general, and in particular as it pertains to the press, both in criminal and civil cases" (fn. omitted)].) And, in *Green v. Uccelli* (1989) 207 Cal.App.3d 1112 [255 Cal.Rptr. 315], the court stated that: "The contents of the file of a divorce proceeding are 'historically and presumptively' a matter of public record." (*Id.* at p. 1120; see also *Lechowick, supra,* 65 Cal.App.4th at p. 1414 ["[i]n general, court files in family law cases should be treated no differently than the court files in any other cases for purposes of considering the appropriateness of granting a motion to seal any of those files" (fn. omitted)]; *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 298 & fn. 3 [116 Cal.Rptr.2d 833] [" '*NBC Subsidiary* test applies to the sealing of records,' " quoting Judicial Council of Cal., Advisory Com. com. to Cal. Rules of Court, rule 243.1; rules 243.1 and 243.2 "were adopted to comply with the Supreme Court's decision"].)[23]

█ In short, no basis exists for concluding that court records should be differentiated from courtroom proceedings for purposes of First Amendment access rights. Court records in divorce proceedings, like divorce proceedings themselves, are presumptively open, and the standards delineated in *Globe* and *NBC Subsidiary* apply. We turn now to those standards and their application in this case.

---

[23] Mr. Burkle contends *Green v. Uccelli* and *Lechowick* do not, contrary to Ms. Burkle's assertion, "express California law" in holding that divorce proceedings and records in California have traditionally been open. *Green,* he points out, was not itself a divorce case, and does not cite other divorce cases for the proposition that divorce records have traditionally been open. *Lechowick,* he asserts, was criticized by *NBC Subsidiary,* which "cast grave doubts on its continued viability." We do not agree. *NBC Subsidiary* did not criticize *Lechowick*'s holding that, in general, court files in family law cases should be treated no differently than the court files in any other cases, or its statement that no California case even hints that the principle of historically and presumptively open court records varies when family law litigation is involved. (*Lechowick, supra,* 65 Cal.App.4th at pp. 1413–1414.) *NBC Subsidiary* describes *Lechowick* as one of the few cases to mention Code of Civil Procedure section 124 (the statute construed in *NBC Subsidiary,* providing that court sittings shall be public). The Supreme Court's "critici[sm]" of *Lechowick* was only with respect to the guidance *Lechowick* gave to the trial court on remand, about the closure of future hearings. Indeed, the criticism was that *Lechowick*'s description of closure requirements "fail[ed] to take into account rules of procedure and substance set out in . . . cases construing the First Amendment . . . ." (*NBC Subsidiary, supra,* 20 Cal.4th at pp. 1195–1196, fn. 11.) There is not the faintest hint of disagreement with *Lechowick*'s conclusion that divorce proceedings and records in California are presumptively open.

### D. *Application of* Globe *and* NBC Subsidiary *principles to section 2024.6 compels the conclusion that the statute runs afoul of constitutional requirements.*

Section 2024.6 mandates the sealing of presumptively open court records at the request of either party to a divorce proceeding. Under *NBC Subsidiary*, the mandatory sealing of presumptively open records is constitutionally permissible only if (1) an overriding interest supports the sealing rule; (2) a substantial probability of prejudice to that interest exists absent the sealing; (3) the sealing required by the statute is narrowly tailored to serve the overriding interest; and (4) no less restrictive means are available to achieve the overriding interest. (See *NBC Subsidiary, supra,* 20 Cal.4th at pp. 1217–1218.) Under *Globe,* the test is similar: "Where . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." (*Globe, supra,* 457 U.S. at pp. 606–607.) Under either formulation, section 2024.6 is unconstitutional, as it is not narrowly tailored to serve the privacy interests it is intended to protect, and less restrictive means of protecting the privacy interests are available. Section 2024.6 thus fails the third and fourth factors of the *NBC Subsidiary* test.

#### 1. *The first factor: the overriding privacy interest.*

We entertain no doubt that, in appropriate circumstances, the right to privacy may be properly described as a compelling or overriding interest. The right to privacy is an inalienable right guaranteed under the California Constitution, and has been acknowledged as an overriding interest in certain individualized contexts. (*Press-Enterprise I, supra,* 464 U.S. at p. 512 [privacy interests of a prospective juror during individual voir dire].) The right to privacy extends to one's personal financial information. (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977] ["we may safely assume that the right of privacy extends to one's confidential financial affairs as well as to the details of one's personal life"].) This does not mean that parties who come to court, voluntarily or not, are entitled to privacy in respect of court records that are, as discussed at length, *ante,* presumptively public records.[24] Nevertheless, if there is a substantial probability of prejudice to a privacy interest of higher value than the public's right of access to court records—such as, in this case, the

---

[24] In *Estate of Hearst, supra,* 67 Cal.App.3d at pages 783 and 784, the court observed that "when individuals employ the public powers of state courts to accomplish private ends, . . . they do so in full knowledge of the possibly disadvantageous circumstance that the documents and records filed . . . will be open to public inspection," and that "with public protection comes public knowledge" of otherwise private facts.

avoidance of identity theft or other crimes relating to the misuse of personal financial information—a statute narrowly tailored to serve the privacy interest may be constitutionally permissible. (See *Press-Enterprise I, supra*, 464 U.S. at p. 510 ["[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest"].)

> 2. *The second factor: a substantial probability of prejudice to the overriding interest absent the sealing.*

We are less sanguine about the existence of a substantial probability of prejudice to divorcing litigants' privacy interests absent the sealing mandated by section 2024.6. Mr. Burkle asserts that the legislative history of section 2024.6 is "replete" with evidence of the Legislature's concern about the risk of identity theft and other misuse of the personal financial information which divorcing parties must disclose. The legislative history indicates that the bill's author cited "numerous anecdotes" of stolen identities. More specifically: "According to the author, concerns about identity theft, stalking, kidnapping of the divorcing couple's children, theft of art works and other property, and other finance-related crimes have instigated parties and their attorneys to file motions to make such records private under seal. . . . [¶] . . . [¶] Since the courts' decisions in *Uccelli* and *Lechowick* [stating that general principles against protecting personal information in civil cases apply to family law cases as well], concerns related to financial privacy and identity theft resulting from information made available to the public on the internet and public documents such as court filings have indeed proliferated. The author notes that accounts of the ease by which criminals have accessed financial and other identifying information of private individuals have attracted intense media attention." (Assem. Com. on Judiciary, analysis of Assem. Bill No. 782 (2003–2004 Reg. Sess.) as amended May 5, 2004, pp. 3–4.)

The press concedes that identity theft is a serious problem and that litigants have a privacy interest in their bank account and Social Security numbers. However, the press insists the state does not have a compelling interest in "drawing a veil of secrecy over the financial information—such as the assets held by the couple—at the heart of a divorce proceeding and the basis for a divorce court's decision on the division of marital property." Even if there is a compelling interest in protecting divorcing litigants from identity theft and other crimes, the press asserts there is no empirical evidence that section 2024.6 furthers that interest.

The legislative history provides scant evidence that sealing pleadings in divorce cases is necessitated by the risk of identity theft or other crimes,

since it consists principally of "anecdotes" and "concerns" about identity theft. Notably, the legislative history also shows the bill's author cited "intrusive and unjust media publicity about divorcing couples with substantial assets," and stated "the public clearly has no need to know what assets a couple has accumulated, where those assets are located, and how those assets are to be divided." (Assem. Com. on Judiciary, analysis of Assem. Bill No. 782 (Reg. Sess. (2003–2004) as amended May 5, 2004, p. 3.) On the other hand, it "is not the judiciary's function . . . to reweigh the 'legislative facts' underlying a legislative enactment" (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 372 [204 Cal.Rptr. 671, 683 P.2d 670]), and in some cases the existence of facts supporting the legislative judgment is presumed. (See *Dribin v. Superior Court* (1951) 37 Cal.2d 345, 352 [231 P.2d 809].)  ■  Consequently, while we entertain some doubt as to the linkage between access to court documents and identity theft, we defer, for purposes of this analysis, to the presumed. legislative findings, and conclude that a statute narrowly drawn to protect divorcing parties from identity theft by denying the right of access to sensitive information would be constitutionally permissible.

> 3. *The third factor: the statute is not narrowly tailored to serve an overriding interest in protecting divorcing couples from identity theft and other misuse of private information.*

■  Section 2024.6 runs afoul of the constitutional requirement that a statute which seals presumptively open court records must be narrowly tailored to serve the privacy interest being protected—in this case, the avoidance of identity theft and other crimes founded on the misuse of private information. The reach of the statute extends far beyond the overriding interest in protecting divorcing litigants from identity theft, kidnapping, stalking, theft or other financial crimes, and the defect is apparent from the face of the statute.

Section 2024.6 mandates the sealing, on request, of any pleading—defined as a declaration or document setting forth assets and liabilities, a marital settlement agreement, and any document incidental to a declaration or marital agreement—that "provides the location or identifying information about [the parties'] assets and liabilities . . . ." (§ 2024.6, subds. (a) & (c).) Consequently, routine pleadings—such as, in this case, a motion for summary judgment, discovery motions, and so on—with any location or identifying information about assets may be sealed without regard to the content of the remainder of the pleading. Moreover, the statute closes to public view not only the identifying information that would facilitate identity theft or other financial crimes—Social Security numbers, account numbers, locations—but all

information pertaining to any asset, including its existence, its value, the provisions of any agreement relating to the asset, and any contentions that may be made about the resolution of disputes over an asset. In short, much of the information contained in documents as to which sealing is mandated may be completely unrelated to the asserted statutory goal of preventing identity theft and financial crimes.

Mr. Burkle asserts section 2024.6 is narrowly tailored to prevent the kind of harm the statute seeks to forestall because it applies only to divorce cases (which require the parties to divulge personal financial information), and only to the pleadings that list and identify assets (not to all pleadings). We are not persuaded. The harm that the statute seeks to forestall—the overriding interest it must be narrowly tailored to serve—is, as Mr. Burkle states elsewhere, "the risk of identity theft and other misuse of personal financial information which divorcing parties are required to disclose." Section 2024.6, however, mandates the sealing of the entirety of any pleadings that list and identify or locate assets and liabilities. It is plainly not narrowly tailored to seal only the information which arguably presents a risk of identity theft or other misuse, such as credit card numbers, account numbers, Social Security numbers and the like.

Mr. Burkle also contends the statute is narrowly tailored because it provides for "particularized determinations in individual cases," citing *Globe, supra,* 457 U.S. at page 611, footnote 27. In *Globe,* the high court held that a rule of mandatory closure of criminal trials during the testimony of minor sex victims was constitutionally infirm, because it failed to require "particularized determinations in individual cases . . . ." (*Ibid.*) Section 2024.6, Mr. Burkle claims, provides for "not merely one but two 'particularized determinations in individual cases,'" because (1) a party must ask for sealing, and the trial court reviews the documents to confirm they contain identifying information before ordering them sealed; and (2) documents may be unsealed if good cause is shown. Again, we are not persuaded. An ex parte application that cannot be denied (unless the applicant asks to seal documents containing no asset information) is not, we are confident, the kind of particularized determination contemplated by the high court in *Globe.* Moreover, the possibility of later unsealing documents, upon a petition and showing of good cause, is entirely irrelevant to the pertinent question under *NBC Subsidiary:* whether the initial sealing mandated by the statute is narrowly tailored to serve an overriding interest in protecting divorcing parties from identity theft and other financial crimes. Clearly it is not.[25]

---

[25] Mr. Burkle argues that section 2024.6 gives courts "at least as much discretion" to decide what to seal as many other statutes in the Family Code, citing statutes relating to adoption records, psychological evaluations of children in custody disputes, and so on. We do not assess the constitutionality of a statute by comparing it to other statutes not at issue, particularly

### 4. *The fourth factor: less restrictive alternatives.*

Mr. Burkle argues that section 2024.6 is constitutional because the press did not meet its burden of showing "there is no less restrictive means of achieving the overriding interest." (*NBC Subsidiary, supra*, 20 Cal.4th at p. 1218, fn. omitted.) The press's only proposal, Mr. Burkle asserts, was the redaction of specific identifying information instead of sealing the document in which the information appears. While Mr. Burkle correctly states that the burden of demonstrating reasonable alternatives rests with the press (*id.* at p. 1218, fn. 40), he suggests no reason why redaction is not a reasonable alternative to effect the statutory purpose.[26] He merely states that redaction "is unnecessary where . . . the sealing statute is already so narrowly tailored . . . ," and that any benign information is inextricably intertwined with prejudicial information. Both points are without substance. As we previously concluded, the statute is not narrowly tailored, and the claim that benign and prejudicial information is inextricably intertwined is entirely speculative, since the statute allows sealing without any such assessment. (See *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1026 [27 Cal.Rptr.3d 596] [redacting information from a search warrant affidavit was impossible because benign information was inextricably intertwined with prejudicial information].) In short, it is obvious that less restrictive alternatives exist, and Mr. Burkle's argument to the contrary is without merit. (See *Globe, supra*, 457 U.S. at p. 609 [statute mandating closure could not be viewed as a narrowly tailored means of accommodating state's compelling interest in safeguarding the well-being of a minor; "[t]hat interest could be served just as well by requiring the trial court to determine on a case-by-case basis whether the State's legitimate concern for the well-being of the minor victim necessitates closure"].)

### E. *Section 2024.6 cannot be interpreted or reformed to avoid constitutional infirmity.*

Finally, Mr. Burkle alternatively argues that section 2024.6 should be construed "to authorize judges to seal or redact only the specified financial information rather than the entirety of the pleading in which it was contained." Specifically, Mr. Burkle suggests that section 2024.6, subdivision (a), which states that: "the court shall order a pleading that lists the parties' financial assets and liabilities . . . sealed" should be construed to mean that: "the court

---

where those statutes govern matters as to which the necessary requisites for a presumption of openness—historical tradition and utilitarian value—have not been found to apply. (See discussion in pt. B, *ante*.)

[26] Indeed, Mr. Burkle himself argues, in the alternative, that this court should interpret the statute to require redaction of only the information specified in the statute, rather than the entire pleading. (See pt. E, *post*.)

shall order *that part of* a pleading . . . sealed [i.e., redacted]." This "minor emendation," according to Mr. Burkle, would be consistent with the legislative intent "to protect only the specified financial information" and is "clearly preferable to outright invalidation of the statute." We conclude this is not a proper case in which to reform the statute to preserve its constitutionality.

■ It is settled that courts should interpret statutes to avoid constitutional infirmities and that, in an appropriate case, a court may reform or rewrite a statute to preserve it against invalidation. (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 660–661 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (*Kopp*).) The rule is this: "[A] court may reform—i.e., 'rewrite'—a statute in order to preserve it against invalidation under the Constitution, when we can say with confidence that (i) it is possible to reform the statute in a manner that closely effectuates policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred the reformed construction to invalidation of the statute." (*Ibid.*) The *Kopp* standards for reformation of a statute are not met in this case.

The text of the statute and its legislative history make it apparent that we cannot "say with confidence" that Mr. Burkle's proposed rewriting of the statute, or any other rewriting, would "closely [effectuate] policy judgments clearly articulated by" the Legislature. (*Kopp, supra,* 11 Cal.4th at p. 661.) The legislative intention was clear: the Legislature intended to "establish[] procedures for keeping the location or identifying information about the assets and liabilities of the parties in a dissolution matter sealed."[27] (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 782 (2003–2004 Reg. Sess.) as amended May 25, 2004, p. 1.) Moreover, the procedures selected by the Legislature—mandating the sealing, on an ex parte basis, of any document containing information on marital assets and liabilities—were clearly intended to streamline the process of sealing documents in dissolution proceedings by entirely eliminating the need for individualized determinations of good cause to justify a sealing order.[28]

---

[27] The only policy judgment expressly articulated by the Legislature in the legislation appeared in connection with its passage as an urgency statute: "It is necessary that this act take effect immediately as an urgency statute because the records that this act seeks to protect may disclose identifying information and location of assets and liabilities, thereby subjecting the affected parties and their children, as well as their assets and liabilities, to criminal activity, violations of privacy, and other potential harm." (Assem. Bill No. 782 (2003–2004 Reg. Sess.) § 4.)

[28] One report on the bill recites the necessity, under current law, for an individualized determination of good cause to restrict public access to portions of court records, including noticed motions and hearings, weighing of the privacy interest against the public's right of access, and a compelling showing to justify a sealing order. The analysis describes the "well-established policy in California to allow maximum public access to judicial proceedings and records," and another analysis observes that "the same general principles against protecting

However, the streamlining procedure selected by the Legislature—the sine qua non of the statute—is, as we have seen, incompatible with constitutional requirements. Further, as the trial court observed, "there is not even a glimmer" of legislative intent to authorize trial court discretion to redact specified financial information, rather than to mandate sealing of entire pleadings. And, even if we were to construe section 2024.6 as Mr. Burkle suggests—to redact "that part of" the pleadings containing lists of assets and identifying information—the statute as so construed would shield from public view not only the information necessary to achieve the legislative purpose of preventing identity theft and other crimes, but also, we presume, all other information pertaining to any asset or liability, including its existence, nature and value. Information on the nature and value of marital assets, however, has little to do with the Legislature's only clearly articulated policy judgment: its interest in preventing disclosure of "identifying information and location of assets and liabilities" that would subject divorcing couples to criminal activity.

Moreover, an interpretation of the statute that would render it constitutional would necessarily amount to a wholesale revision of the statute, and would require us to interpret the statute to mean, in some respects, precisely the opposite of what it states. For example, section 2024.6 not only mandates sealing of pleadings with identifying information about assets without regard to the remainder of the pleading's contents, but also prohibits unsealing "except upon petition to the court and good cause shown." (§ 2024.6, subd. (a).) As the press correctly points out, this provision effectively destroys the presumption of access to court records by automatically sealing them and placing the burden of showing good cause for unsealing them on the party presumptively entitled to access. This burden on the party presumptively entitled to access is, by definition, wholly at odds with the presumption. (See *Oregonian Pub. v. U.S. Dist. Court for Dist. of Or.* (9th Cir. 1990) 920 F.2d 1462, 1466–1467 [under the First Amendment, the party seeking access "is entitled to a presumption of entitlement to disclosure" and it is the burden of the party seeking closure to present facts supporting closure]; *Mary R. v. B. & R. Corp.* (1983) 149 Cal.App.3d 308, 317 [196 Cal.Rptr. 871] ["the burden rests on the party seeking to deny public access to those records to establish compelling reasons why and to what extent these records should be made private"].) The Legislature obviously intended this impermissible result, and we cannot construe the statute contrary to its plain meaning.

---

personal information in civil cases generally currently apply to family law cases as well . . . ." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 782 (2003–2004 Reg. Sess.) as amended May 5, 2004; Assem. Com. on Judiciary, analysis of Assem. Bill No. 782 (2003–2004 Reg. Sess.) as amended May 5, 2004, p. 4.)

To summarize, reforming section 2024.6 to render it constitutional would require us to construe the statute to provide for trial court discretion to redact rather than, as the statutory language provides, mandatory sealing. Alternatively, it would require us to construe section 2024.6 to provide for mandatory redaction of parts of pleadings rather than, as the statutory language states, sealing of entire pleadings, and to determine which parts of the pleading should be automatically redacted.[29] And, it would require us to conclude that section 2024.6 does not place the burden of showing good cause for unsealing on the party presumptively entitled to access, when it plainly does exactly that. These constructions of the statute are not in accordance with its plain language, nor do they "closely [effectuate] policy judgments clearly articulated by" the Legislature. (*Kopp, supra,* 11 Cal.4th at p. 661.) Accordingly, it is impossible to discern how the Legislature would have chosen to proceed in light of the constitutional infirmity we have described[30] and we cannot, consistent with the principles established in *Kopp,* reform the statute to preserve its constitutionality.

## CONCLUSION

The First Amendment provides a right of access to court records in divorce proceedings, just as in other ordinary civil cases. While the interest in protecting divorcing parties from identity theft and other financial crimes may override the First Amendment right of access in a proper case, section 2024.6 is not narrowly tailored to serve that interest. Because less restrictive means of achieving the statutory objective are available, section 2024.6 is unconstitutional on its face as an undue burden on the First Amendment right of public access to court records.

---

[29] At oral argument, Mr. Burkle's counsel took the position that, in reforming section 2024.6, the statute should be construed to require redaction of the value of the assets, as well as location or identifying information. However, the statutory language suggests that a pleading that lists assets and liabilities, but does not provide location or identifying information, is not covered by section 2024.6. The Judicial Council form to which section 2024.6, subdivision (b) refers (FL-316 (Jan. 1, 2005)), consonant with the statutory language, likewise indicates that the trial court must seal listed documents "because they contain the location or identifying information about" assets or debts.

[30] The Legislature might choose, for example, to specify limited items of identifying information, such as account numbers, for "automatic" or mandatory redaction that would survive constitutional scrutiny. (Section 2024.5, for example, which was enacted as a part of the legislation that includes section 2024.6, provides for the redaction of any social security number from any pleading, attachment, document, or other written material filed with the court pursuant to a dissolution petition.) This court, however, cannot deduce any such intention from the policy judgments articulated by the Legislature in the statute and its history.

## DISPOSITION

The trial court's order of February 28, 2005, vacating its provisional sealing order of December 21, 2004, is affirmed, and the stay ordered by the trial court is vacated. Costs are awarded to respondents.

Cooper, P. J., and Rubin, J., concurred.

On February 1, 2006, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 17, 2006, S141394.