[No. A080435. First Dist., Div. Two. Aug. 7, 1998.]

In re the Marriage of JUDITH and VINCENT T. LECHOWICK.
JUDITH SUNDQUIST, Respondent, v.
VINCENT T. LECHOWICK, Respondent;
MARK HEIMANN, Appellant.

**COUNSEL**

Mark Heimann, in pro. per., for Appellant.

Vincent T. Lechowick, in pro. per., for Respondent Husband.

No appearance for Respondent Wife.

**OPINION**

**HAERLE, J.—**

## I.   INTRODUCTION

This is an appeal by a "free lance" journalist, appellant Mark Heimann, from a minute order of the Mendocino County Superior Court denying his application to unseal the court records and open any further proceedings to the public in a long-running marital dissolution proceeding in that court, a proceeding in which one of the parties, respondent Vincent T. Lechowick (respondent), is a sitting judge in that county. We reverse and remand.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The underlying dissolution action was commenced some years ago by Judith Lechowick, who is now named Judith Sundquist and lives in Oregon.

Although her attorney appeared and joined respondent in opposing appellant's application in the trial court, Ms. Sundquist is not an active party to this appeal.

During a June 3, 1996, hearing in the dissolution action, and in response to a motion by one of the parties, the trial judge (the Honorable Roy MacFarland) entered an order in the court minutes[1] closing the proceedings in the case to the public.

Later the same day, counsel for the couple's minor children moved the court "to seal [the] record of todays [*sic*] proceedings, and [the] entire file" in the case. The court minutes then read: "Court orders this file sealed to the public." At the same time, the court admonished counsel to seal their records "as it relates to the media." These motions were, at least according to the later argument of Ms. Sundquist's counsel in connection with the instant motion, because the proceedings then in process included "personal testimony concerning the psychological evaluation of the parties" which implicated custody and visitation of their minor children.

Over a year later, specifically on July 21, 1997, another hearing was held in the action. This time, the Honorable Winton McKibben presided. At this point, according to both the minutes of that day's hearing and the later representations of respondent, the issues were substantially "financial." In any event, during the morning session of that day (according to the court minutes), respondent "addresse[d] the court regarding a 170.6 by a party in interest (Mr. Heimenn) [*sic*] and his request to open hearings in this case." In response the court ruled: "Order of case being sealed must be respected." During the afternoon session on the same day, and in connection with a discussion regarding the confidentiality of income tax returns being offered as exhibits, the minutes reflect Judge McKibben as ruling: "This case remains confidential and sealed."

Shortly before this second hearing, on July 11, 1997, appellant, appearing pro se, filed an "Ex Parte Application for Order to Show Cause Why The Hearings and Court File in This Case Should Not be Opened to the Public," along with a brief supporting declaration and memorandum of points and

---

[1]Neither of the earlier minutes referred to herein was in the original appellate record in this case. By motion dated April 22, 1998, appellant moved to augment the record to add the "entire file" of the lower court in this case. We directed the Mendocino County Clerk to furnish us, by way of an augmented record, any and all orders of any nature entered by any trial judge in the action either closing the proceeding to the public or sealing any records. In response, we received from that clerk the minutes of the two hearings cited in the text and, by order dated May 18, 1998, we augmented the record to include those minutes, but otherwise denied the motion to augment.

authorities. In it, he identified himself as a "free-lance journalist specializing in the Court system on assignment from the Anderson Valley Advertiser" and alleged that, because one of the parties to it (respondent) was a sitting judge, "[t]he proceedings . . . are newsworthy" due to "the public's compelling interest in the affairs of their elected public officials."

The superior court issued a responsive order to show cause on July 18, 1997, and appellant's motion was ultimately set for hearing on August 28, 1997. Prior to the hearing, counsel for Sundquist filed a two-page memorandum opposing appellant's application. Respondent filed no advance opposition.

The matter was heard before the Honorable Carlos P. Baker, Jr., on August 28, 1997. Appellant and respondent both appeared pro se. As previously noted, Sundquist appeared via counsel. After argument by all three, and unsuccessful efforts by respondent to introduce evidence of antagonism towards him by appellant and his publisher, the matter was submitted. The court then orally denied appellant's motion and a minute order to the same effect was thereafter filed.[2] Appellant timely appealed.

## III. Discussion

### A. Appealability of the Order at Issue

This appeal is from a minute order deriving from the August 28, 1997, hearing. Both it and the reporter's transcript recite the court's denial of appellant's application. Although appellant's notice of appeal states that he prepared and presented a written order for the court's signature and filing, no such order appears in the record. This defect is not, however, fatal: An unsigned minute order can form the basis of an appeal, unless it specifically recites that a formal order is to be prepared; this one does not. (See Cal. Rules of Court, rule 2(b)(2); 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 42, pp. 437-438 and cases cited therein; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 499, pp. 541-543, and cases cited therein.)

We likewise conclude the order is appealable as a final order on a collateral matter. (See, for similar rulings, *In re Keisha T.* (1995) 38

---

[2]The minutes of the August 28, 1997, hearing conclude with a recitation that the "[c]ourt . . . finds good cause to deny the motion. [¶] Orders remain as they stand."

At no point in any of the three hearings in question (June 3, 1996, July 21, 1997, or August 28, 1997), at least as far as can be ascertained from the minutes thereof, were any declarations or affidavits proffered or filed or testimony taken regarding the reasons why any particular records should be sealed. At oral argument, respondent conceded that such was the case.

Cal.App.4th 220, 229 [44 Cal.Rptr.2d 822]; *Gilbert* v. *National Enquirer, Inc.* (1996) 43 Cal.App.4th 1135, 1148, fn. 3 [51 Cal.Rptr.2d 91].)

B.  *The Applicable Principles of Law*

█ Appellant's original application for an order to show cause raised *both* the right of the press and the public to view and hear ongoing proceedings in the case and their rights of access to the sealed court records. Thus, his memorandum in support of his application asked that the "proceedings and files [be] opened to public scrutiny." Both below and here, respondent has treated these matters as if they involve one and the same legal issue, an issue he contends is substantially controlled by Family Code section 214 (§ 214). The trial court apparently agreed with respondent's (and Sundquist's counsel's) general line of argument, ruling that it would "leave the [prior] orders as they stand to protect this record."

Section 214, upon which respondent principally bases his argument,[3] reads: "Except as otherwise provided in this code or by court rule, the court may, when it considers it necessary in the interests of justice and the persons involved, direct *the trial of any issue of fact* joined in a proceeding under this code to be private, and may exclude all persons except the officers of the court, the parties, their witnesses, and counsel." (Italics added.)

We think the language of this section makes clear that it is intended to apply to the issue of when a court may make *the trial of part* of a family law case private, i.e., exclude the public. This is borne out by the language of section 124 of the Code of Civil Procedure, which reads in its entirety: "Except as provided in Section 214 of the Family Code or any other provision of law, the sittings of every court shall be public."

The only two cases we have found construing section 214 support the conclusion that it is directed principally, if not exclusively, at *hearings or trials* of family law matters. In the first, *Whitney* v. *Whitney* (1958) 164 Cal.App.2d 577, 582 [330 P.2d 947] (*Whitney*), Division One of this district affirmed an order of the San Francisco Superior Court in (what is now called) a family law matter, an order which closed the hearing to the public. The court said that such an order was not, under a predecessor section

---

[3]At oral argument, respondent also relied upon the California constitutional provision regarding an individual's right to privacy as also validating the trial court's orders. However, no case has interpreted this provision (Cal. Const., art. I, § 1) as validating orders to seal court files. Indeed, what authority there is under it pertaining to government employees' personnel records has rejected respondent's interpretation. (Cf. *Braun* v. *City of Taft* (1984) 154 Cal.App.3d 332, 346-347 [201 Cal.Rptr. 654].)

reading similarly to section 214, an abuse of discretion.[4] It stated: "The court's exclusion of the public in this case was well within the purview of that section. It was done for the good of the child, a purpose that would not be best subserved by further discussion." (164 Cal.App.2d at p. 582.)

But the most definitive word on the application of section 214 comes from *Green v. Uccelli* (1989) 207 Cal.App.3d 1112 [255 Cal.Rptr. 315] (*Green*), a decision from Division Five of this district. *Green* involved a suit for, among other things, invasion of privacy. The attorney-plaintiff premised that cause of action on allegations that the defendant had caused to be published material from the plaintiff's divorce proceedings. In support of his argument that the trial court had improperly sustained a demurrer to his complaint, the plaintiff noted that the trial court had entered two confidentiality orders. These orders withheld "from public inspection the papers on file in [plaintiff's] then pending [dissolution] action." (*Id.* at p. 1117.) Former Justice Donald King, writing for a unanimous court, held that any alleged violation of these orders could not be a basis for liability because, among other things, the code sections the plaintiff relied upon to obtain those orders, including the predecessor to section 214, "*do not authorize sealing the file. . . .* Section 4360 only authorizes, under limited circumstances, the exclusion of the public from a family law trial." (207 Cal.App.3d at p. 1119, italics added.)

Justice King quickly distinguished *Whitney*, the only case the plaintiff cited in seeking his confidentiality order from the trial court, by noting that that case "did not discuss sealing a file, only the closing of a hearing to the public. [¶] In order to state a cause of action for invasion of privacy, Green must allege that Uccelli publicly disclosed private facts, not that he violated a court order. The contents of the file of a divorce proceeding are 'historically and presumptively' a matter of public record. [Citation.] In short, as an attorney, Green should have realized that when he filed his action for dissolution in superior court he was entering a public forum which would

---

[4]Section 214's immediate predecessor was Civil Code section 4360; before that, it was Civil Code section 4519, and before that (dating back to 1872) Code of Civil Procedure section 125, the section at issue in *Whitney*.

At oral argument, respondent contended that section 214 should be given a broader interpretation, because it applies to more types of proceedings than its immediate predecessor, Civil Code section 4360. We disagree. The Law Revision Commission Comment to section 214 states: "Section 214 continues without change and generalizes former Civil Code Section 4360. The former provision applied only to former Part 5 (commencing with Section 4000) of Division 4 of the Civil Code (the former Family Law Act), whereas Section 214 applies to the entire Family Code." (29C West's Ann. Fam. Code (1994 ed.) § 214, p. 36.) All this means is that the section now applies to all types of proceedings identified in the Family Code. Particularly because the language of the section remained the same, it cannot mean that it now applies to such substantially different issues as, e.g., the sealing of court records.

result in public disclosure of private facts." (*Green, supra,* 207 Cal.App.3d at pp. 1119-1120.)[5]

We agree with the *Green* court that section 214 only authorizes the closing, under some circumstances, of court hearings and proceedings. It is not generally applicable to the issue of sealing court files.[6] There is one obvious exception, however: As and when an order is entered closing some part or parts of a family law proceeding to the public, it follows that, unless the court's order suggests to the contrary, any and all exhibits and transcripts deriving from any such proceeding should likewise be considered confidential. (We shall address the possible application of this exception in this case in the next part of this opinion.)

Several other California cases sustain the rule articulated in *Green* regarding the (generally) open nature of court files. In *Pantos* v. *City and County of San Francisco* (1984) 151 Cal.App.3d 258, 262-263 [198 Cal.Rptr. 489], the same court stated: "The law favors maximum public access to judicial proceedings and court records. [Citations.] Judicial records are historically and presumptively open to the public and there is an important right of access which should not be closed except for compelling countervailing reasons." (See also *Champion* v. *Superior Court* (1988) 201 Cal.App.3d 777, 788 [247 Cal.Rptr. 624] (*Champion*) ["We must be vigilant to ensure that nothing presented to the court is sealed without a strong justification."]; *Estate of Hearst* (1977) 67 Cal.App.3d 777, 785 [136 Cal.Rptr. 821] [a trial court possesses "limited power, exercisable under exceptional circumstances and on a showing of good cause, to restrict public access to portions of court records on a temporary basis"]; *Gilbert* v. *National Enquirer, Inc., supra,* 43 Cal.App.4th at p. 1149; *Wilson* v. *Science Applications Internat. Corp.* (1997) 52 Cal.App.4th 1025, 1030-1031 [60 Cal.Rptr.2d 883]; *Copley Press, Inc.* v. *Superior Court* (1998) 63 Cal.App.4th 367, 376 [74 Cal.Rptr.2d 69]; cf. also *Copley Press, Inc.* v. *Superior Court* (1991) 228 Cal.App.3d 77, 83-87 [278 Cal.Rptr. 443].)[7]

Contrary to respondent's contention, no California case holds or even hints that the principles articulated in these cases vary when family law litigation is involved. Indeed, *Green* appears to be the only case to date directly considering that issue, and it squarely holds there is no such

---

[5]At oral argument, respondent disputed the authority of *Green,* contending that Justice King's quoted statements are "dicta." They clearly are not.

[6]And, even assuming arguendo that it was applicable, from the record before us, it does not appear that a showing necessary for the application of section 214 was ever made. Moreover, that section certainly would not validate the sealing of the "entire file."

[7]For a collection of cases on this subject nationally, see Annotation (1978) 84 A.L.R.3d 598 and 1997 pocket supplement, page 90.

variance. We agree: In general, court files in family law cases should be treated no differently than the court files in any other cases for purposes of considering the appropriateness of granting a motion to seal any of those files.[8] We accordingly must reverse the order appealed from and remand the case to the trial court.

## C. The Appropriate Procedure on Remand

Because of the relative novelty of the issues posed, the history of the litigation below, and the obvious antagonism of the parties to this appeal,[9] we think it prudent to provide specific guidance to the trial court on remand. In general, and consistent with our rulings, we would urge the trial court to deal separately with the issues of (a) the public or private nature of any future court proceedings in the underlying action and (b) the unsealing of any or all records in the court's files.

As to the issue of future court proceedings, and as discussed above, section 214 provides authority under which a court may order some proceedings before it closed to the public, including the press. With respect to any future court proceedings in this case, respondent (or Ms. Sundquist, of course) is free to move for such an order pursuant to section 214. However, we think it is clear, from the very terms of that section ("when it considers it necessary in the interests of justice and the persons involved . . . any issue of fact"), that it is not a device by which a court may close to the public *all* proceedings in a given family law matter. Rather, we think it plain

---

[8]Some Family Code provisions and Family Law Court Rules identify instances, not applicable here, where either proceedings should be closed to the public and court records sealed or both. See, e.g., Family Code sections 1818, 7643 and 7884, and California Rules of Court, rules 1216(e), 1224, and 1228. See also the intriguingly elastic rule 1249 which provides that the trial court has the power to adopt "any suitable process or mode of proceeding . . . which appears conformable to the spirit of the Family Code and these rules."

[9]Which brings us to another collateral issue: Via a March 11, 1998, request to augment the record, respondent supplied this court with much of what we assume he tried (unsuccessfully) to get into evidence before Judge Baker on August 28, 1997. We treated this as a request for judicial notice and, as such, granted it by our order of March 30, 1998. However, of the five items attached to respondent's request, two of them (consisting of correspondence to and articles about respondent allegedly authored by appellant and his publisher) postdate the trial court order appealed from and, in any event, are not the proper subject of judicial notice. (See Evid. Code, § 451 et seq.) The remaining three are partial court records dealing with various legal entanglements of appellant and his publisher. All five items are presumably submitted for the same purpose the same or similar items were proffered to Judge Baker: to establish the animus of the authors against respondent. But we have essentially the same doubts as the trial court obviously harbored regarding the pertinency of any such showing. Even assuming the unmitigated and possibly even irrational hostility of appellant and his publisher toward respondent, such cannot affect the legal issue of their rights of access to court records or proceedings. Upon further consideration, therefore, we conclude none of the five items noted are relevant to any issue before us and we will therefore disregard them.

that a section 214 order must pertain to the trial of one or more particular "issue[s] of fact" and be justified by a showing of particularized need by the moving party.

With respect to the issue of the continued sealing (or, conversely, the unsealing) of existing court records, we note three points:

First, before *any* unsealing takes place, either party to the dissolution action should be afforded the opportunity to make a showing that certain specific records should remain sealed.

Second, even though the June 3, 1996, order did not, at least per the court minutes, recite any reliance on section 214, we think the trial court should, on remand, presume that Judge MacFarland relied on that section in closing that hearing to the public.[10] It is apparent from the court minutes that certain documents were then and there introduced into evidence. And, of course, a reporter's transcript of that hearing is presumably available. As we noted earlier, an order properly entered under section 214 would necessarily protect from public scrutiny not only the proceeding itself, but also any transcript of it and documents introduced into the court's files at or in connection with it (including pleadings and exhibits). Thus, on remand, the trial court should be particularly attentive to any such documents deriving from that hearing and, unless appellant can rebut the presumption that they should be kept confidential as a result of the application of section 214 to the hearing in question, keep such under seal. The court may, of course, in its discretion, examine any such documents in camera.

Third and finally, if respondent (or Ms. Sundquist) moves for an order sealing any documents in the court files not deriving from that hearing, the court shall consider such a motion under the principles announced by our colleagues in Division Three of this court a decade ago: "[A] party seeking an order to seal documents or portions of documents must segregate the confidential or arguably confidential documents or portions of documents from the public documents or portions, and in the public documents say nothing that discloses the contents of the confidential documents or portions.

---

[10]We specifically do not suggest that any such presumption should apply to either the July 21, 1997, hearing or any other hearing in the underlying dissolution action. (At oral argument, respondent suggested there were several such.) This is so because apparently (a) no specific court orders for the closing of hearings or the sealing of court records were entered at any subsequent hearing other than that of July 21 (see fn. 1, *ante*), and (b) all hearings after June 3, 1996, were closed to the public and their records sealed because, and only because, of Judge MacFarland's order of that date. The latter conclusion drives from the language of Judge McKibben's minute order of July 21, 1997 ("Order of case being sealed must be respected").

A request to seal a document must be filed publicly and separately from the object of the request. It must be supported by a factual declaration or affidavit explaining the particular needs of the case. Where the contents of the to-be-sealed document become a focus of the argument for sealing, the request must refer the court to the to-be-sealed document, where the court may review its contents and any content-specific declarations and arguments about sealing it. Public documents that argue the merits of the case must refer to sealed or to-be-sealed documents without disclosing their contents, and where possible should, at least when referring to to-be-sealed documents, stand on their own, and not depend upon the contents of the to-be-sealed documents. . . . Arguments on the merits which cannot be made publicly without disclosing confidential information should be made in separate documents accompanied by requests to seal." (*Champion, supra,* 201 Cal.App.3d at pp. 788-789;[11] see also *Estate of Hearst, supra,* 67 Cal.App.3d at p. 785.)

Again, of course, the court may examine any such documents in camera before making its ruling or rulings.

## IV. DISPOSITION

The order appealed from is reversed and the cause remanded to the trial court for proceedings consistent with this opinion. Costs on appeal are awarded to appellant.

Kline, P. J., and Lambden, J., concurred.

A petition for a rehearing was denied August 28, 1998, and the petition of respondent Vincent T. Lechowick for review by the Supreme Court was denied November 18, 1998.

---

[11]The ruling in *Champion* pertained to the sealing of files in an appellate proceeding. However, we believe its principles are fully applicable to a trial court proceeding.