Filed 1/11/16  Marriage of Bonner CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of CANDY and TERENCE BONNER. | D066627 |
| CANDY BONNER, | |
| Respondent, | (Super. Ct. No. ED88462) |
| v. | ORDER MODIFYING OPINION |
| TERENCE BONNER, | [NO CHANGE IN JUDGMENT] |
| Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on December 22, 2015, be modified as follows:

1. On page 6, the first sentence of the last full paragraph, the words "and bifurcate the issue for a separate trial" are deleted so the sentence reads:

"The court granted Candy's request to divide Terence's pension."

**There is no change in the judgment.**

McCONNELL, P. J.

Copies to:  All parties

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of CANDY and TERENCE BONNER. | D066627 |
| CANDY BONNER,<br><br>    Respondent,<br><br>    v.<br><br>TERENCE BONNER,<br><br>    Appellant. | (Super. Ct. No. ED88462) |

APPEAL from orders of the Superior Court of San Diego County, Darlene A. White, Judge.  Affirmed.

Terence Bonner, in pro. per., for Appellant.

No appearance for Respondent.

Appellant Terence Bonner, a self-represented litigant, appeals from an order of the family court (1) awarding $2,500 in attorney fees to his former spouse, respondent Candy

Bonner;[1] (2) granting Candy's request for an interim order requiring Terence to pay her one half of his community property pension distributions; and (3) denying Terence's request for "private proceedings" on issues of fact, which Terence sought based on his Fifth Amendment right against self-incrimination. Terence also appeals from the family court's order denying reconsideration of the above-referenced order. Terence contends the family court prejudicially erred in these rulings. With respect to his motion for private proceedings, he argues in part that the court failed to rule on a motion to strike Candy's pleadings, its order both vitiates a prior discovery protective order and nullifies his protections under the Fifth Amendment, and the court applied the wrong legal standard in making its order. As for the attorney fees and pension distribution orders, Terence contends they contravene laws that mandate parity in access to legal representation; the attorney fees order is unsupported and unjustified; and the division of his pension was prejudicial in part because it constitutes an unequal distribution of the community estate and hampers his ability to retain counsel.

Candy has not filed a respondent's brief in this matter. California Rules of Court, rule 8.200 states: "Each respondent must serve and file a respondent's brief." (Cal. Rules of Court, rule 8.200(a)(2).) This rule provides that if the respondent does not timely file a brief, this court "may decide the appeal on the record, the opening brief, and any oral argument by the appellant." (Cal. Rules of Court, rule 8.220(a)(2).) We elect to do so, and will not treat Candy's failure to file a respondent's brief as a default or an admission

---

[1] For the sake of clarity and without intending any disrespect, we will refer to the parties by their first names.

that the family court erred. (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1078, fn. 1.) The better practice is to examine the record on the basis of Terrence's brief and reverse only if prejudicial error is found. (See *In re Bryce C.* (1995) 12 Cal.4th 226, 232-233.)

Applying this procedure, we conclude Terence has failed to provide us with an adequate record to permit review of some of his claims. To the extent his claims are reviewable on the record provided, we conclude the family court did not err. Accordingly, we affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Terence and Candy were married in March 1978 and separated on August 29, 2012. Dissolution proceedings commenced after their separation. Terence is retired from the U.S. Customs and Border Patrol (Border Patrol), where he worked from May 1978 to May 2010, and he receives a pension in connection with that employment. In August 2012, Terence was indicted by a federal grand jury on criminal charges of conspiracy to commit wire fraud, wire fraud and aiding and abetting.

In January 2014, the family court entered a judgment of dissolution as to Terence and Candy's marital status only. The next month, the federal government dismissed the

---

[2] We state the background facts from documents in the appellate record. In his opening brief, Terence relates proceedings in this court by which he sought to seal portions of his appellant's appendix and the reporter's transcript, but this court issued orders denying that request as well as his ensuing motion for reconsideration. We do not address Terence's arguments underlying those orders.

criminal charges against Terence with prejudice and agreed to " 'forgo bringing any new charges against [him] based on evidence or information currently in its possession.' "

In April 2014, the family court issued a protective order for nondisclosure of specified financial information and documents to third parties and others. The protective order broadly covered the parties' documents such as bank and credit card statements, tax returns and other pay information, work vouchers and expense receipts, documents responsive to both parties' discovery requests, pleadings, stipulations, orders, and judgments entered in the action.[3]

In June 2014, Candy moved for an order bifurcating the issue of Terence's community property Border Patrol pension and setting it for trial. She submitted a declaration averring that the pension was a community property asset as they were married throughout the entire time Terence worked for the Border Patrol, but Terence had not agreed to equally divide his pension under community property laws. She averred that since their August 2012 separation, Terence was drawing his pension but had not provided her with any portion of his monthly pension benefit payments. Candy asked the

---

[3]     More specifically, the protective order defined "Confidential Documents and Information" as credit card statements; bank statements; tax returns, pay stubs and other income documentation and information; travel and/or expense vouchers and related receipts and claims; any and all documentation pertaining to, or information regarding, the parties' or either party's personal and/or business interests; any and all documents responsive to either party's discovery requests in this matter; financial statements, charts or summaries generated by either party and/or their respective counsel; any other documents produced or generated by either party and/or their respective counsel and/or expert witnesses; pleadings filed or lodged by either party in this action; and any stipulation, order or judgment entered in the matter.

court to reserve jurisdiction over her interest from the date of separation until benefits were divided. At some point, Candy also moved for attorney fees.

Terence thereafter filed a motion "for private proceedings in the trial of any issue of fact covered by the terms of the court's April 30, 2014 protective order." He argued his Fifth Amendment rights mandated such private proceedings; he maintained that those facing the possibility of criminal charges could not be compelled to waive their rights against self-incrimination in a civil proceeding, and in his case the federal government, despite its dismissal of the criminal charges, did not grant him immunity from prosecution or foreclose the possibility of bringing future charges based on other evidence or information. Terence asserted he demonstrated the requisite "particularized need" for private proceedings in keeping with Family Code[4] section 214. He argued his right against self-incrimination outweighed any public interest in monitoring the family law proceedings, pointing out federal agents could observe the public proceedings or access the public records relating to the case. He argued that allowing such public access would render the provisions of the Court's protective order "wholly meaningless and ineffective . . . ."

Candy opposed Terence's motion for private proceedings, and Terence moved to strike certain portions of her opposing declaration and opposition papers. Terence also opposed Candy's motion for attorney fees, and to divide his pension.

---

[4]    Statutory references are to the Family Code unless otherwise specified.

After swearing the parties in and hearing their arguments on the matter, the court took the matter under submission.

On July 7, 2014, the court filed its findings and order after hearing. As to Candy's request for attorney fees, it summarized her arguments, and stated she had attached the required family law forms to her request. It found her motion procedurally adequate, as Candy had requested an award both for payment of past fees incurred and to hire counsel, and she had "provided the necessary declarations and testimony in support of her request." The court found Candy "has a need for attorney's fees based both on her income and expenses, and based on the complexities of this case and numerous motions and issues raised by respondent." It further found Terence "has an ability to pay the fees based on his income and expenses." The court awarded Candy $2,500 in attorney fees payable on or before August 1, 2014.

The court granted Candy's request to divide Terence's pension and bifurcate the issue for a separate trial. It ruled: "[Terence] has been receiving the entirety of his pension since this case has been pending, without voluntarily providing [Candy] her community property share. There is no dispute that the pension is community property. While [Terence] argues that there are other financial considerations that the court should consider in equally dividing the community estate, the court does not find those to be dispositive on this issue, or that wife should not receive her share of the pension pending further resolution of those issues. Finally, the court does not find that a bifurcated trial on the issue is necessary, as this is an interim order without prejudice to either side to argue a different distribution or characterization of the funds at any settlement or trial." The

6

court ordered Terence to begin paying Candy one half of any pension distributions forthwith until an interim QDRO [qualified domestic relations order] could be prepared, and its order states it "specifically reserves over the characterization and distribution of these funds at a later date as either a property division, or as and for additional attorney's fees."

The court denied Terence's motion for private proceedings. Relying on section 214 and *In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406 (*Lechowick*), the court stated it could only order a closed proceeding in a family law matter if the court finds such a hearing " 'is necessary in the interests of justice and the persons involved' " and such an order "must pertain to one or more particular issues of fact and the moving party has the burden of showing a particularized need for a closed trial on that issue." It reasoned: "Here, [Terence] is requesting that the court conduct 'private proceedings' for anything that may involve documents or financial issues covered by the protective order in this case. He does not specify with any particularity what particularized issues would be covered, nor does he meet his burden of showing that a closed proceeding is necessary in the interests of justice. While [Terence] cites to his Fifth Amendment rights, implying that they outweigh any First Amendment issues, the argument is without merit. [Terence] may, if he chooses to, invoke his Fifth Amendment right at any trial or proceeding in this case. However, to conduct his family law proceedings in a closed manner regarding what he characterizes as any issue covered by the documents in the protective order is clearly overbroad, not pled with specificity and not warranted." Based on its ruling, the court did not address Terence's request to seal all transcripts of any

7

closed proceedings, but found in any event that the requirements of California Rules of Court, rule 2.550(d) were not met.

Terence unsuccessfully moved for reconsideration. He appeals both the July 7, 2014 order and the order denying reconsideration.

DISCUSSION

I. *Principles of Appellate Review*

Before we turn to Terence's contentions, we emphasize that Terence as the appellant "must be able to affirmatively demonstrate error on the record before the court." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.) He has the burden to provide an adequate record on appeal to allow this court to assess the purported error. (See *In re Marriage of Fink* (1979) 25 Cal.3d 877, 887 [" 'It is incumbent upon appellants to state fully, with transcript references, the evidence which is claimed to be insufficient to support the findings' "]; *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 678.) These rules apply to self-represented litigants like Terence, who is "entitled to the same, but no greater, rights than [a] represented litigant[ ] and [is] presumed to know the [procedural and court] rules." (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.) Additionally, we apply the settled rule that the family court's orders are presumed correct, with " ' "[a]ll intendments and presumptions . . . indulged to support [them] on matters as to which the record is silent . . . . This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." ' " (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 898, quoting *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) If the

8

order is correct on any theory, this court will affirm it regardless of the family court's reasoning. (See *Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19.)

"Furthermore, error alone does not warrant reversal. 'It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result.' [Citation.] ' "The burden is on the appellant, not alone to show error, but to show injury from the error." ' [Citation.] 'Injury is not presumed from error, but injury must appear affirmatively upon the court's examination of the entire record.' [Citation.] 'Only when an error has resulted in a miscarriage of justice will it be deemed to be prejudicial so as to require reversal.' [Citation.] A miscarriage of justice is not found 'unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result.' " (*In re Marriage of Falcone & Fyke*, *supra*, 164 Cal.App.4th at pp. 822-823.) We have these contentions in mind as we consider Terence's arguments.

## II. *Order Denying Motion for Private Proceedings*

Terence contends the family court prejudicially erred by denying his motion for private proceedings. The order, we note, is appealable as a final order on a collateral matter. (*Lechowick*, *supra*, 65 Cal.App.4th at pp. 1410-1411; accord, *Burkle v. Burkle* (2006) 135 Cal.App.4th 1045, 1051, fn. 6 [order denying sealing of pleadings in divorce proceeding was final order on collateral matter].) Terence makes several different arguments on this point, which we address in turn.

9

First, Terence maintains the family court erred by failing to consider his accompanying motion to strike portions of Candy's responsive pleadings. But while Terence has included his mandatory Judicial Council Request for Order form FL-300 in the appellate record, he has not included any of the supporting documentation for his motion to strike, or any of Candy's pleadings filed in response to his motion for private proceedings. Consequently, we have no indication what specific documents or portions of documents he sought to strike, and there is no factual or legal reasoning apparent as to the basis for striking portions of Candy's responding papers. Terence asserts the family court considered Candy's responsive pleadings despite his motion, but the record does not support this assertion, as the trial court simply stated that "[Candy] opposes the request for private proceedings, citing to case law supporting the Fifth Amendment." Because Terence did not obtain a ruling on the motion, we presume the trial court denied it (see, e.g., *Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1480, fn. 7), and it was Terence's burden to demonstrate that evidentiary ruling was an abuse of discretion. (*In re Marriage of Dupre* (2005) 127 Cal.App.4th 1517, 1525.) He has neither shown the trial court erred, or that any error prejudiced him by somehow disclosing confidential documents or information.

Terence next argues that he has a reasonable belief his financial information could be used against him in a subsequent criminal proceeding, the family court's order vitiates the April 2014 protective order it put in place, and the order nullifies his protections under the Fifth Amendment. Even assuming Terence demonstrated a reasonable belief his financial documentation could be used against him in a criminal proceeding and that

10

disclosure of those documents implicated his Fifth Amendment rights against self-incrimination, his arguments ignore the fundamental issue in his motion: whether his showing justified an order for a closed trial or other family law proceeding under section 214. An order for closed proceedings is an entirely *different* order, unrelated to the court's protective order covering documents. Indeed, if the family court's broad protective order alone justified closed proceedings in any matter involving the protected documents, it would eliminate the need for a section 214 showing. This is not the law.

Section 214 provides that a family court "may, when it considers it necessary in the interests of justice and the persons involved, direct the trial of any issue of fact joined in a proceeding under this code to be private, and may exclude all persons except the officers of the court, the parties, their witnesses, and counsel." "[S]ection 214 only authorizes the closing, under some circumstances, of court hearings and proceedings. It is not generally applicable to the issue of sealing court files." (*Lechowick*, *supra*, 65 Cal.App.4th at p. 1413, citing *Green v. Uccelli* (1989) 207 Cal.App.3d 1112, 1119.) When the court closes a family law hearing or part of a proceeding to the public, "it follows that, unless the court's order suggests to the contrary, any and all exhibits and transcripts deriving from any such proceeding should likewise be considered confidential." (*Lechowick*, at p. 1413.) However, section 214 "is not a device by which a court may close to the public *all* proceedings in a given family law matter. Rather . . . it [is] plain that a section 214 order must pertain to the trial of one or more particular 'issue[s] of fact' and be justified by a showing of particularized need by the moving party." (*Lechowick*, at pp. 1414-1415.)

11

Under this provision, in order to obtain an order for private proceedings, Terence was required to show a particularized need for a closed trial of *one or more specific issues of fact*. The family court found Terence did not make any such showing, and having reviewed the record, we are compelled to conclude Terence has not shown error. In his declaration accompanying the motion, Terence related the background and conclusion of the federal criminal proceedings, and explained that during discovery in his criminal case, the federal government had produced "more than 60,000 pages of documents and hundreds of spreadsheets containing millions of data entries." He stated, "Notwithstanding the scope and breadth of the information that the federal government obtained, to the best of my knowledge it did not obtain any information related to the six joint credit card accounts that Petitioner and I had shared. The federal government did not provide me with any documents pertaining to such accounts during discovery in my criminal case. [¶] To the best of my knowledge the federal government did not seek or obtain any information regarding any of my individual credit card accounts after May of 2011. The federal government did not provide such documents to me during discovery in my criminal case." Terence further averred that Candy's discovery sought information pertaining to their joint and his individual credit card accounts, and that there was "a large amount of other financial information that may be discoverable and/or admissible in the instant proceeding which the federal government did not obtain during its criminal investigation of me."

It was not enough for Terence to recite a generalized need to protect his credit card accounts and other financial documents from disclosure under the Fifth Amendment.

12

Nothing in Terence's showing describes the particular *issues of fact* relating to his confidential documents that in the interest of justice warranted a closed trial or hearing. Indeed, there was not even information from which the family court could deduce such issues, as Terence did not suggest any potential crimes with which he might be charged as a result of the disclosure of the above referenced documents.

Finally, Terence argues the family court applied the wrong legal standard to his motion: that the court's finding above—that Terence did not specify what particularized issues would be covered or that a closed hearing was necessary in the interest of justice— is "at odds with established case law." According to Terence, it is "well-settled that persons invoking their constitutional right against self-incrimination cannot be required to state the precise hazards that they fear, as doing so could compel them to surrender such rights." Terence relies on *Hoffman v. U.S.* (1951) 341 U.S. 479 and *Blackburn v. Superior Court* (1993) 21 Cal.App.4th 414 for the proposition that the requirements of section 214 "could provide a link in the chain of evidence needed to prosecute him."

In *Hoffman v. U.S.*, the United States Supreme Court held that the Fifth Amendment privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. [Citation.] But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. [Citations.] *The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It*

13

*is for the court to say whether his silence is justified*, [citation], *and to require him to answer if 'it clearly appears to the court that he is mistaken.' "* (*Hoffman v. U.S.*, *supra*, 341 U.S. at p. 486, italics added; see also *People v. Seijas* (2005) 36 Cal.4th 291, 304; *People v. Ford* (1988) 45 Cal.3d 431, 441; *Blackburn v. Superior Court*, *supra*, 21 Cal.App.4th at pp. 427-428.) " 'To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.' " (*People v. Seijas*, at pp. 304.)

Terence's argument in effect is that once he has invoked his Fifth Amendment privilege, he has no further burden to prove that his answers (or more to the point, his specification of particularized issues under section 214) may provide incriminating testimony. If we accept Terence's contention, we would exonerate a witness based solely on his "say-so," contrary to *Hoffman*. But under *Hoffman*, the final determination as to whether the privilege was properly invoked lies with the family court.[5] Assuming,

---

5     The Supreme Court explained in *United States v. Reynolds* (1953) 345 U.S. 1: "[I]n the earlier stages of judicial experience with the [Fifth Amendment privilege against self-incrimination], both extremes were advocated, some saying that the bare assertion [of the Fifth Amendment privilege] by the witness must be taken as conclusive, and others saying that the witness should be required to reveal the matter behind his claim of privilege to the judge for verification. Neither extreme prevailed, and a sound formula of compromise was developed. . . . There are differences in phraseology, but in substance it is agreed that the court must be satisfied from all the evidence and circumstances, and 'from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.' [Citation.] If the court is so satisfied, the claim of the privilege will be accepted without requiring further disclosure." (*Id.* at pp. 8-9.)

14

without deciding, that *Hoffman* applies to the inquiry under section 214, Terence did not demonstrate to the court that he had "reasonable cause to apprehend danger from a direct answer" (*Hoffman*, *supra*, 341 U.S. at p. 486), or from a direct explanation of the particular factual issues at hand, so as to justify a closed proceeding.

The family court's denial of Terence's request for closed proceedings does not affect the protective order for confidential documents the court already put in place. Presumably, future hearings will proceed as did those on Candy's or Terence's motions in the matter, with the parties lodging confidential documents with the trial court, and the parties making their arguments and presenting facts under oath during the hearing.

III. *Interim Order For Distribution of Terence's Pension Benefits*

Terence challenges on several grounds the family court's order requiring him to pay Candy one half of all Border Patrol pension payments received by him. In part, he argues the court ignored the parties' income and expenses, ignored his entitlement to a share in other community assets and thus did not equally distribute the community estate, and disregarded evidence that Candy had received funds from his pension.[6]

---

[6] More specifically, Terence contends the family court failed to address the parties' current income and expenses, and "skewed the distribution of the parties' assets and liabilities to the point of absurdity." He argues the court "focused exclusively on [his] pension income and ignored the fact that he is entitled to one-half of the housing rental income, as well as one-half of respondent's 401(a) retirement savings account and a significant portion of her pension." Terence contends the court "ignored the devastating financial effect that its 'interim' division of [his] pension has on his ability to pay for the necessities of life as well as his own legal representation," leaving him with only 26.7 percent, and Candy with 74.3 percent, of the parties' total gross income. He maintains the order compels the conclusion that the family court premised its decision on the belief he had not provided Candy with any funds from his pension since she filed for dissolution or

15

We need not address these contentions, because we conclude the interim distribution order is not appealable, but interlocutory, and thus we lack appellate jurisdiction to consider it. " 'In "determining whether a particular decree is essentially interlocutory and nonappealable, or whether it is final and appealable . . . [i]t is not the form of the decree but the substance and effect of the adjudication which is determinative." ' " (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1216.) " ' "[I]t may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." ' [Citations.] A judgment [or order] is final ' " 'when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.' " ' [Citations.] ' "[W]here anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory" ' and not appealable." (*Id.* at pp. 1216-1217.)

Here, the family court's order, which it expressly described as "interim," contemplates further proceedings to distribute Terence's pension, namely the preparation of a QDRO. Further, the court explicitly reserved the determination of the characterization and distribution of Terence's pension funds as a property division or as

that his post-separation payments of community expenses were gifts, which was "at odds" with the financial information filed and lodged with the court and "clear error."

additional attorney fees.  Because more " ' "in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties," ' " (*In re Marriage of Corona, supra,* 172 Cal.App.4th at p. 1217), this aspect of the July 7, 2014 order is not appealable.

Though the court's pension distribution order directs the payment of money, we cannot say it falls within the so-called collateral order doctrine, which is an exception to the one final judgment rule.  (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 781.)  " 'Where the trial court's ruling on a collateral issue "is substantially the same as a final judgment in an independent proceeding" [citation], in that it leaves the court no further action to take on "a matter which . . . is severable from the general subject of the litigation" [citation], an appeal will lie from that collateral order even though other matters in the case remain to be determined.  [Citation.]  [¶]  In determining whether an order is collateral, "the test is whether an order is 'important and essential to the correct determination of the main issue.'  If the order is 'a necessary step to that end,' it is not collateral." ' "  (*Ibid*, quoting *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561; see also *In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 734-735.)  Here, the court's order does not "leave[] the court no further action to take" (*City of Colton*, at p. 781) on the distribution of Terence's pension.  Additionally, the family court expressly declined to bifurcate the issue for separate trial and thus the rules permitting certification of an immediate appeal from a bifurcated issue do not apply.  (See § 2025; Cal Rules of Court, rule 5.392; *In re Marriage of Lafkas* (2007) 153 Cal.App.4th 1429, 1433.)  The record

17

does not indicate Terence attempted to invoke appellate jurisdiction by this procedure in any event.

Anticipating our conclusion, Terence asks us to treat any nonappealable order as a petition for an extraordinary writ. However, his arguments merely relate to the family court's order denying his motion for private proceedings: he maintains that absent appellate relief, his Fifth Amendment rights will be nullified and he will be exposed to potential criminal prosecution by the disclosure of his financial information covered by the trial court's April 2014 protective order. Even assuming Terence's request applies to the court's pension distribution order, he has not show the requisite extraordinary or unusual circumstances necessary for us to exercise this jurisdiction. (See *Olson v. Cory* (1983) 35 Cal.3d 390, 401; *Katzenstein v. Chabad of Poway* (2015) 237 Cal.App.4th 759, 770, fn. 16.) "A petition to treat a nonappealable order as a writ should only be granted under extraordinary circumstances, ' "compelling enough to indicate the propriety of a petition for writ . . . in the first instance . . . ." ' " (*Estate of Weber* (1991) 229 Cal.App.3d 22, 25.) In *In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, relied upon by Terence, both parties agreed it was prudent and economical to bifurcate the issue of whether the community had an interest in a medical subsidy—which was akin to a liability determination—from its valuation, which was akin to damages. (*Id.* at pp. 404-405.) The court stated that if the husband was correct that the medical subsidy was not divisible, "an expensive trial to determine its value would be unnecessary." (*Id*. at p. 404.)

We discern no such unusual or extraordinary circumstances associated with this purported appeal. Terence makes no showing that an appeal would not provide an adequate remedy at law, one of the necessary elements for proceeding by way of a petition for writ of extraordinary writ. (*In re Marriage of Lafkas*, *supra*, 153 Cal.App.4th at pp. 1434-1435.) Thus, we decline to treat this aspect of Terence's appeal as a petition for writ of mandate.

## IV. *Attorney Fee Order*

### A. *Legal Principles and Standard of Review*

"In any proceeding subsequent to the entry of a dissolution judgment, 'the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding.' [Citations.] [¶] In determining whether to award attorney fees, the court must consider the parties' respective needs and incomes. [Citation.] The court is not limited to considering the parties' salaries. The court may also consider all evidence of the parties' income, assets and abilities." (*In re Marriage of M.A. & M.A.* (2015) 234 Cal.App.4th 894, 903; citing in part § 2030, subd. (a)(1).) The family court may further consider the other party's trial tactics, as well as the complexity of the case relating to property rights and support. (§ 2032, subd. (d); *In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 657; *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295,

19

1313.)[7]  "[T]he purpose of section 2030 is *not* the redistribution of money from the greater income party to the lesser income party.  Its purpose is *parity:* a fair hearing with two sides equally represented.  The idea is that both sides should have the opportunity to retain counsel, not just (as is usually the case) only the party with greater financial strength."  (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 251-252.)

Section 2030, subdivision (a)(2) provides that "[w]hen a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties.  If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs.  A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other

---

[7]      Section 2032 provides in part:  "(a) The court may make an award of attorney's fees and costs under Section 2030 or 2031 where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties.  [¶]  (b) In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320.  The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested.  Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances.  [¶] . . . [¶] (d) Either party may, at any time before the hearing of the cause on the merits, on noticed motion, request the court to make a finding that the case involves complex or substantial issues of fact or law related to property rights, visitation, custody, or support.  Upon that finding, the court may in its discretion determine the appropriate, equitable allocation of attorney's fees, court costs, expert fees, and consultant fees between the parties."

party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward."

"[A] motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court. [Citations.] In the absence of a clear showing of abuse, its determination will not be disturbed on appeal." (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768-769.) We affirm the court's order unless " 'no judge could reasonably make the order made.' " (*Id.* at p. 769; see also *In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 630.)

B. *Contentions*

Terence challenges the family court's order awarding Candy $2,500 in attorney fees, contending (1) Candy did not provide the court with information required by California Rules of Court, rule 5.427(b)(2), (d)(2); (2) Candy did not show any disparity in income that would justify his paying attorney fees, since he was paying the majority of community expenses; (3) the court did not consider the factors set forth in sections 2030 and 2032; (4) the court's finding concerning complexities in the case was "contrary to law;" and (5) there is no factual support for the court's conclusion that he has the ability to pay $2,500 in attorney fees.

C. *Analysis*

With the settled appellate review principles in mind, we address and reject Terence's contentions in turn. Preliminarily, there is no merit to Terence's procedural argument concerning Candy's compliance with rule 5.427 of the California Rules of

21

Court, which specifies documents that must be submitted with a request for attorney fees and costs. The family court expressly found Candy's moving papers contained the required family law forms, and her motion was "procedurally adequate." Because we presume the court's findings are correct, it is Terence's burden to affirmatively demonstrate that they are incorrect, unsupported by the evidence, or somehow contradicted by the record. In the face of a silent record, we presume the documents before the family court supported its findings. (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.)

The appellate record in this case does not contain Candy's motion for attorney fees, or any of her supporting documentation. It indicates that Terence lodged in the family court a 10-page declaration opposing Candy's request to divide his pension, but that declaration is likewise not in the record. He also filed a declaration opposing Candy's request for attorney fees. Though the record indicates he attached four pages of supporting material to that declaration, those documents are not in the record. Consequently, the only opposing information by Terence in the record is a statement that Candy had the ability to pay her own attorney fees and costs and the sworn factual assertions he made to the trial court that are reflected in the reporter's transcript.[8]

---

[8] We recognize that the family court's protective order required the parties to limit disclosure of a broad category of documents and lodge items so that they were not publicly accessible. But the family court's April 2014 protective order expressly anticipated the potential need to disclose documents "for the purposes of appeal," and this court has procedures in place to submit items that were sealed in the lower court or that the parties wish to file under seal in this court. (See Cal. Rules of Court, rules 8.46, 8.47.)

Terence's failure to provide an adequate record—his omission of not only Candy's moving papers but also his own opposing documentation—means that his complaints about the court's findings concerning disparity in income and his ability-to-pay must be resolved against him as well. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502, citing *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) Where an appellant challenges the trial court's factual findings, we defer to the trial court's determinations and " 'do not reweigh evidence or reassess the credibility of witnesses.' " (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531; see *In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34.) Terence argues Candy did not demonstrate any disparity in income, that "[a] review of the parties' income and expense[ ][declarations] reveals that there was no disparity in access to funds to retain counsel," and he could not afford to pay for legal counsel for himself. The sole "evidence" he cites for these propositions are his statements made at oral argument on the matter that the parties' gross incomes were within $340 of each other "when you plug in the correct figures for [Candy's] salary, as well as the rental income," and that he was paying the "lion's share" of the community expenses.

But these assertions are arguments drawn from documents and factual matters, including income and expense declarations and other sworn declarations, that are not before us. The family court plainly rejected Terence's arguments, and we have no basis by which to assess the court's conclusions, which we presume are supported by the documents and pleadings provided by Terence and Candy. We observe also that the

23

parties' earnings are not the only factor the court must consider.  As the Supreme Court has stated:  " '[T]he cases have frequently and uniformly held that the court may base its decision on the [paying spouse's] ability to earn, rather than his [or her] current earnings . . . .' for the simple reason that in cases such as this, current earnings give a grossly distorted view of the paying spouse's financial ability."  (*In re Marriage of Sullivan*, *supra*, 37 Cal.3d at p. 769 [involving former Civ. Code, § 4370].)  Under these circumstances we reject Terence's sufficiency of the evidence arguments, including Terence's argument that there is no factual support for the court's finding that he has an ability to pay.

Nor is there merit to Terence's contention that the family court failed to consider the factors set out in sections 2030 and 2032.  According to Terence, the order "contains no discussion of the factors required by law, and they were not discussed during the hearing."  But the record is to the contrary.  The trial court acknowledged that Candy attached the required forms (FL-150, FL-158 and FL-319) to her papers, and it referenced both parties' income and expenses in making its ruling.  It acknowledged the parties' competing arguments as to whether they had disparate income, and it expressly found Candy "has a need for attorney's fees based both on her income and expenses, and based on the complexities of this case and numerous motions and issues raised by [Terence]," and that Terence had "an ability to pay the fees based on his income and expenses." These findings meet the requirements of section 2030, subdivision (a)(2).

Under section 2032, subdivision (b) (see footnote 7, *ante*), the family court was required to take into consideration Terence's and Candy's needs for sufficient financial

24

resources to present their case adequately, and take into account, "to the extent relevant," their circumstances as described in section 4320. (§ 2032, subd. (b).) Section 4320 lists the circumstances to be considered in determining spousal support, including the supported party's marketable skills, earning capacity, the supporting party's ability to pay spousal support, each party's needs, each party's obligations and assets, their age and health, and the duration of the marriage. Section 2032 makes clear that the court was not required to make explicit findings on all the section 4320 factors where some of the factors were irrelevant (§ 2032, subd. (b)), and it possessed discretion to determine the weight of each factor in balancing them. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304.) We presume the trial court had before it sufficient information from Candy's moving and Terence's opposing papers to consider these matters, and Terence has not affirmatively demonstrated that anything in the record overcomes that presumption.

Terence's claim that the family court's finding concerning the complexity of the case is "contrary to law" also fails. Citing section 2032, subdivision (d), he maintains the complexity in the case related not to property rights, visitation, custody or support, but to his criminal investigation and prosecution, and his invocation of his Fifth Amendment rights. Terence fails to appreciate that the potential for another criminal prosecution and his claimed need for Fifth Amendment protection resulted in the broad protective order covering virtually all documents and pleadings in the matter. This protective order potentially impacted the parties' ability to try virtually any issue in the case, especially issues requiring consideration of financial documentation including the division of

25

Terence's pension, a community property asset. Under the circumstances, the court did not legally err by finding the case involved "complex or substantial issues of fact or law related to property rights . . . ." (§ 2032, subd. (d).)

## V. *Order Denying Reconsideration*

Terence makes no separate substantive argument challenging the family court's order denying reconsideration of his motion for private proceedings, other than to argue that that order is appealable as a " 'final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it.' " An order denying a motion for reconsideration is not separately appealable but is reviewable as part of an appeal from the underlying order, if that order is reviewable. (Code Civ. Proc. § 1008, subd. (g).) We have considered and disposed of Terence's appeal from the order denying his request for private proceedings. Absent any substantive arguments challenging the reconsideration order, we conclude he has not demonstrated error in connection with that motion.

## DISPOSITION

The orders are affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.